## B. F. Martin v. Elizabeth Swofford.

1. Trust Deed. *Tax title. Purchase by secured creditor.*

   Whether a creditor secured by a deed of trust on land can purchase a tax title and set it up against the grantor, *quære;* but he cannot buy for their mutual benefit, and then use the title acquired to defeat the equity of redemption.

2. SAME. *Buying paramount title.   Contract for mutual benefit.*
  This principle applies in cases where the understanding between the
  grantor and his secured creditor follows the latter's acquisition of the
  tax title, as well as those in which it precedes his purchase.

3. SAME. *Trustee's sale.   Preventing bidding.   Cloud on title.*
  A sale under the trust deed for a grossly inadequate price will be set
  aside at suit of the debtor, if bidding was prevented by the fact that
  the beneficiary held the tax title.

4. TAX TITLE. *Cancellation.   Security for expenditures.*
  Upon cancelling the tax deed, in such a case, the decree should provide
  for repayment to the creditor of the amount which he expended in
  purchasing the land with statutory damages and interest.


APPEAL from the Chancery Court of Copiah County.

Hon. E. G. PEYTON, Chancellor.

*R. N. Miller,* for the appellant, argued orally and in writing.

1. The existence of the deed of trust did not invalidate the
tax deed. A mortgagee out of possession not receiving the
rents and profits, and under no obligation to pay taxes, may
purchase a valid tax title and set it up against the mortgagor.
*Williams* v. *Townsend,* 31 N. Y. 411 ; *Waterson* v. *Devoe,* 18
Kansas, 223 ; *Morrow* v. *Dows,* 28 N. J. Eq. 459, note ; *Smith* v.
*Lewis,* 20 Wis. 350 ; *Chapman* v. *Mull,* 7 Ired. Eq. 292 ;
*Coombs* v. *Warren,* 34 Maine, 89 ; 1 Jones on Mortgages, § 713.
He may buy the equity of redemption from the mortgagor, or
at execution sale, and assert it adversely to the mortgagor.
Then, why may he not buy a tax title ? This court properly
held, in the case of *McLaughlin* v. *Green,* 48 Miss. 175, that
Green having enjoined McLaughlin from enforcing his me-
chanic's lien could not acquire a tax title to the land, on the
ground that it was an unconscionable advantage thus to de-
prive McLaughlin by injunction of the fruits of his judgment,
until the advantage accrued and then avail of it. But the
case here is wholly different, for Martin was under no obliga-
tion to pay the tax.

2. The trustee's sale was not void because Martin had in-
sisted upon the tax title. It was not a cloud which deterred
bidders. Mrs. Swofford had abandoned the land, and had given
over all attempts to pay Martin, who had a right to suppose
that she had relinquished all idea of repurchasing it. As

soon after the sale as an offer was made, he promptly agreed; and, to put himself in an attitude to allow the redemption, he took a reconveyance from Varnado. To show his good faith in this matter, he offers, in his answer, to permit Mrs. Swofford to reclaim the land by paying his debt and the taxes.

*H. B. Mayes*, for the appellee, filed a brief and made an oral argument.

1. After Martin had agreed to pay the taxes, it was a breach of faith upon his part to acquire an adverse tax title without notice to Mrs. Swofford that he would not pay her tax. *McMahon* v. *McGraw*, 26 Wis. 614, 623; *Coxe* v. *Wolcott*, 27 Penn. St. 154, 158; *Oldhams* v. *Jones*, 5 B. Mon. 458; Blackwell on Tax Titles, 401, 447. She looked to Martin to pay the taxes because of the interest he had in preserving his security, and because he knew she had nothing with which to pay. *Phillips* v. *Zerbe Run Improvement Co.*, 25 Penn. St. 56; Blackwell on Tax Titles, 443; *McLaughlin* v. *Green*, 48 Miss. 175. The purchase at tax sale was not in good faith a purchase of the land, but a contrivance to acquire title at a nominal value.

2. Without an account for the rents collected by Martin, the offer to allow Mrs. Swofford to redeem is valueless. Is it true that he repurchased from Varnado in order to allow her to redeem? The fact is that when Varnado abandoned the land, because apprehensive of the title, Martin put tenants in possession. No valid sale under the trust deed could be made while this adverse title was outstanding. Competition among bidders was prevented, and the land was sold for a grossly inadequate price. The decree is in all respects correct.

CHALMERS, C. J., delivered the opinion of the court.

This is a bill filed by Mrs. Swofford to vacate and cancel a tax deed, and also a conveyance, executed by a trustee; both held by the defendant (appellant) Martin. The facts upon which she demands this relief are briefly these. Martin was her merchant, and in April, 1875, she executed a trust deed for his benefit, upon her land and crop, to secure him in the advance to her of supplies to the amount of one hundred and

fifty dollars.  At her request, he paid the taxes on the land for the current year, and added the amount to his account against her.  The account was paid off in the autumn, except about thirty-five dollars, by the proceeds of the crop, and this balance was by agreement allowed to stand over for another year.  She asserts that she looked to him to pay the taxes on the land for the ensuing year, as he had those of the year preceding, and that he was aware of this expectation on her part.  He denies that she had any right so to do, or that he knew of such expectation by her.  However this may be, the taxes were left unpaid, and at the sale of the land made by the tax collector he became the purchaser.  He avers that in so doing he had no idea of acquiring a title adverse to the trust deed, but says that he bought only for the better protection of his interests under that instrument, and that shortly after his purchase he notified her of this through her father, with whom she was living.  The twelve months allowed by law for redeeming lands sold for taxes having expired, Martin sold a large portion of the land to one Varnado, and put him in possession.  He then advertised the whole tract for sale under the trust deed, and bought it at the sale for the trifling sum due on his account against her.  The land was worth two thousand dollars.  Varnado, who seems to have paid nothing, subsequently conveyed the land back to Martin, who now owns it.  Upon these facts the Chancellor annulled the tax deed, upon the ground that a mortgagee has no right to acquire an outstanding title and set it up adversely to the equity of redemption of the mortgagor; and the unlawful acquisition of the tax deed in this case having, as he thought, operated to prevent a fair sale of the property under the trust deed, he set aside the trustee's sale also.

Whether a mortagee out of possession can acquire an outstanding title, and set it up against the mortgagor, is a question upon which the authorities are not uniform.  In 1 Jones on Mortgages of Real Property, § 711, the question is answered in the affirmative in the broadest terms; while in Blackwell on Tax Titles (4th ed.) 399, the negative of the proposition is asserted with equal confidence.  Each author is able to refer to cases supporting his view.  Without deciding this

important question (which we are reluctant to do in this case because one of our number is disqualified), we think that the Chancellor held correctly under the facts of this case. According to his own statement, Martin bought the tax title with no view whatever of acquiring an adverse claim, but for the protection of the property, in which he and Mrs. Swofford were alike interested, and for the common benefit of both; and he gave her notice to that effect. As soon, however, as the statutory period for redemption had expired, he conveyed the land to another without giving her notice of his changed intention or of his purpose to sell. We agree with the Supreme Court of Illinois in thinking that whether the mortgagee has a right to buy and set up an outstanding title or not, he cannot buy for the common good and then use the title acquired for the purpose of defeating the rights of the mortgagor. *Moore* v. *Titman*, 44 Ill. 367. In that case there was a mutual understanding between mortgagor and mortgagee before the acquisition of the outstanding title, but we think the principle equally applicable where the understanding succeeds the purchase, and a change of position is thereafter effected by the act of one without notice to the other, who is thus summarily cut off from his opportunity to redeem. That the hostile assertion of the adverse title by selling the land to another, and putting that other in possession, did have the effect in this case of preventing all competition at the subsequent sale under the trust deed, is rendered probable by the grossly inadequate price obtained at that sale. This justified the Chancellor in vacating the deed made by the trustee, but we think it was error to cancel the tax deed without providing for a repayment to Martin of the amount expended in its purchase, and of all statutory damages and interest. He had a perfect right to acquire the tax title for the purpose for which he says that he did acquire it, to wit, for the better protection of his debt, and, when thus acquired, he had the right to enforce it for the reimbursement to himself of the taxes paid off, and also under our statutes for the statutory damages and interest. There can be no reason for remitting him to a new suit for this purpose.

The decree will therefore be reversed, and the cause re-

manded, with instructions to take an account of the amount due Martin, both on his original debt and by reason of his purchase at the tax sale. He will be charged up with all the rents actually received by him from the land, and when the report shall come in stated upon this basis, the court will enter such decree as it shall show to be proper. Costs of this court will be paid by the appellee. Costs of the court below heretofore accrued will be paid by the appellant.

*Decree accordingly.*

COOPER, J., having been of counsel, took no part in this decision.