[S. F. No. 352.   Department Two.—January 6, 1897.]

## FRANCISCA L. DE MARTIN, APPELLANT, *v.* ALICE PHELAN ET AL., EXECUTRICES, ETC.

MORTGAGOR AND MORTGAGEE—FIDUCIARY RELATION—NEGOTIATION FOR PURCHASE.—Where a mortgagee does not give to the mortgagor control over the property mortgaged, or where there is a mere decree of foreclosure and sale, without possession by the mortgagee, or the appointment of a receiver, or any threatening of proceedings therefor, there is no fiduciary relation between the mortgagor and mortgagee, affecting the right of the mortgagee to negotiate a purchase of the rights of the mortgagor in the property mortgaged.

ID.—ADVERTISEMENT OF SALE—PURCHASE FOR LESS THAN VALUE—FINANCIAL DISTRESS OF MORTGAGOR—FRAUD OR OPPRESSION NOT SHOWN.—Where a mortgagee, having a mere decree of foreclosure and sale of the mortgaged property, after having advertised it for sale, postponed the sale for the purpose of negotiating a purchase of the mortgagor's rights, and after a protracted negotiation and successively increasing offers, purchased the right of the mortgagor for much less than its real value, and at a much less price than he would have paid, if necessary to secure the property, which price was accepted by the mortgagor, the fact that it was accepted in ignorance that a greater price might have been obtained, and because of want of available means, and financial stringency, precluding the borrowing of more money upon the land, or the selling of it for more than the mortgage debt, and for fear of losing the property in case of a sale under the decree, it not appearing that the financial stringency was brought on by the mortgagee, or that he

interfered to prevent a sale to another, or to prevent the obtaining of a loan, does not show fraud or oppression on the part of the mortgagee, for which the sale will be set aside.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. JAMES V. COF-FEY, Judge.

The facts are stated in the opinion of the court.

*George H. Maxwell,* and *R. M. F. Soto,* for Appellant.

The complaint states a cause of action on the case. (*Jones* v. *Steamship Cortes,* 17 Cal. 487; 79 Am. Dec. 142; *Rogers* v. *Duhart,* 97 Cal. 500.) Inasmuch as the plaintiff, by reason of the wrongful acts and conduct of the decedent, was deprived of property, she is entitled to recover damages for the injury suffered. (Civ. Code, secs. 333, 1427, 1428, 1708, 3281, 3282; *Wood* v. *Franks,* 56 Cal. 217; *Parmentier* v. *Pater,* 13 Or. 126.) The decedent, James Phelan, was guilty of fraud. (Hilliard on Torts, 4th ed., 74; Bigelow on Fraud, 6; Cooley on Torts, 2d ed., 506.) The assertion by decedent that he had a certain intention was the statement of a fact the truth or falsity of which was known only to himself. (*Hedin* v. *Minneapolis etc. Inst.,* 62 Minn. 146, *Sweet* v. *Kimball,* 166 Mass. 332; *Swift* v. *Rounds,* R. I. July 6, 1896; 35 Atl. Rep. 45.) The relation between the plaintiff and the decedent was that of mortgagor and mortgagee, therefore they did not stand on an equal footing. (*Baldwin* v. *National Hedge etc. Co.,* 73 Fed. Rep. 574.)

*Frank J. Sullivan,* for Respondents.

If this is an action for damages based on undue influence, it is clear no cause of action is stated. (*Bancroft* v. *Bancroft,* 110 Cal. 374; *Le Caux* v. *Eden,* 2 Doug. 594.) The amended complaint wholly fails to state a case of fraudulent misrepresentation of a material fact which was the sole and principal motive of the sale, and which induced plaintiff to part with her equity. (*De*

*Martin* v. *Phelan*, 47 Fed. Rep. 761; *Colton* v. *Stanford*, 82 Cal. 351; 16 Am. St. Rep. 137; *Atlantic etc. Co.* v. *James*, 94 U. S. 212.) The mere silence of decedent as to the value of plaintiff's equity did not constitute fraud. (Cooley on Torts, 476; *Lion* v. *McClory*, 106 Cal. 627.) In the absence of a duty to disclose, any advantage gained by silence was legitimate, and the losing party must bear the loss. (*Harris* v. *Tyson*, 24 Pa. St. 347; 64 Am. Dec. 661; *Williams* v. *Spurr*, 24 Mich. 335; *Ellis* v. *Andrews*, 56 N. Y. 83; 15 Am. Rep. 379; *Ward* v. *Packard*, 18 Cal. 391; 2 Pomeroy's Equity Jurisprudence, sec. 901; Civ. Code, secs. 1572, 1710; *Roseman* v. *Canovan*, 43 Cal. 110; *Hastings* v. *O'Donnell*, 40 Cal. 148; *Walker* v. *Soule*, 138 Mass. 570; *Abbott* v. *North Andover*, 145 Mass. 484; *Damhmann* v. *Schulting*, 75 N. Y. 64.) If, as a matter of fact, the equity could have been sold by plaintiff without regard to the character and force of the representation and silence of decedent, the amended complaint states no cause of action. (*Colton* v. *Stanford, supra;* Pomeroy's Equity Jurisprudence, sec. 890; *Attwood* v. *Small*, 6 Clark & F. 232; *Pulsford* v. *Richards*, 17 Beav. 87; *Phipps* v. *Buckman*, 30 Pa. St. 401; *Smith* v. *Kay*, 7 H. L. Cas. 775; Pollock on Contracts, 560; Parsons on Contracts, 769; *Percival* v. *Harger*, 40 Iowa, 286; *Van Trott* v. *Wiese*, 36 Wis. 446.)

TEMPLE, J.—This appeal is from a judgment upon demurrer to the complaint. The complaint contains averments to the effect that on the fourth day of November, A. D. 1881, plaintiff owned a certain tract of land which was then subject to mortgage liens, then owned by James Phelan. The amount due on said mortgages was $196,-000. The real estate was worth $390,375. The plaintiff and her thirteen children were in indigent circumstances, destitute of available means of support, in great need, and unable to secure an additional loan upon said land or to sell the same, owing to financial stringency then prevailing, and were wholly dependent upon the charity of others. Said Phelan knew of her distressed condi-

tion, and also that her equity of redemption was worth at least $45,500. Still, designing to take advantage of her distress and necessities, he first offered her $4,000, and then $10,000, and finally $19,000, for her equity of redemption. The offers were successively made on different days, and, in the mean time, said Phelan had her property advertised for sale, under execution, on a decree of foreclosure of said mortgages, and had the sale postponed repeatedly, for the purpose of securing her equity of redemption for a sum greatly disproportionate to its value, by taking an oppressive and unfair advantage of her necessities and distress.

Also that on the fourth day of November, 1881, decedent made her the offer of $19,000, and threatened to proceed with the sale unless she accepted it. Compelled by her distress and necessities she finally did accept said offer, and conveyed her equity to him for said sum. She did not know that decedent had taken such advantage, or that he knew of her necessities and distress at that time, but that she discovered such fact on the twenty-seventh day of December, 1887.

It is averred that when defendant falsely represented that he would sell said property, unless she accepted $19,000 for her equity, decedent did not intend to sell said property, but had in fact determined not to sell the same, unless he was unable to procure plaintiff's interest for $45,500. He fully intended to offer her $45,500 for her equity, if he could not procure it for less. This intention was concealed from plaintiff, and decedent knowingly and designedly took advantage of her said necessities and distress.

A great many objections are made to this complaint, but I do not deem it essential to consider any of them, except the general objection that it states no cause of action. That the complaint does not state a cause of action is quite obvious.

The facts constituting the supposed fraud are: 1. Plaintiff was without available means, and in great financial distress; 2. Decedent had obtained a judgment

foreclosing mortgage liens upon her land, amounting to $196,000. Her land was worth much more than this, but, owing to a temporary stringency in the money market, she could not borrow more money upon the land or sell it for more than the mortgage debt; 3. Decedent knew that her equity of redemption was worth $45,500, and was willing to pay her that for it if he could not get it for less, but concealed from her his estimate of its value, and his willingness to pay that sum provided she would not take less; 4. He caused the property to be advertised for sale under the decree, and then caused the sale to be repeatedly postponed; in the mean time making her successive offers for her equity of $4,000, $6,000, $10,000, and $19,000, which last offer she accepted, in ignorance that deceased would have given her more had she insisted upon it, and induced by her necessities and fears of losing her property in case of a sale under the decree.

It is impossible to believe counsel serious in their contention that it constituted fraud or oppression on the part of Phelan, to conceal from her the fact that he intended to offer her as much as $45,500 for her equity, if he could not succeed in getting it for less. It would constitute a new departure, both in business and legal ethics. If the obligation to make such disclosures rested upon Phelan, of course the like obligation rested upon the plaintiff to state to Phelan the very least sum her necessities could induce her to accept rather than permit a sale. Negotiations under such conditions would surely be novel.

The real point in the case is, I presume, that the relations between mortgagor and mortgagee are in a sense fiduciary, and the mortgagee must obtain no advantage over the mortgagor by the use of the least unfairness or oppression; and it is maintained that it was oppression on the part of Phelan to get the property for an inadequate price, taking advantage of her necessities.

1. In the first place, the relation between the parties was in no sense fiduciary. At common law the mort-

gagee, at least after condition broken, was the legal owner and could oust the mortgagor. He was really a trustee. Under our system he occupies no such position, and ordinarily has no control over the mortgaged estate. In those cases in which he is, by the mortgage, given some power or control over the estate before foreclosure the old rule may prevail. There is nothing to show the nature of the mortgages formerly held by Phelan, nor does it now matter. When the wrongs detailed in the complaint were enacted the mortgages had been foreclosed, and Phelan had only his decree. It does not appear that a receiver had been appointed, or that proceedings to that end were threatened.

2. The sale, even after the decree was obtained, was not hastened. The negotiations between the parties were protracted and deliberate. Plaintiff was fully aware of the situation, and knew all the essential facts of the case. The sale was adjourned many times, and successive offers were made to her for her equity. She says she was threatened with a sale under the decree if she did not sell. Of course she knew, without being told, that such sale was inevitable if she did not pay the debt or sell her equity. The financial stringency was not brought on by Phelan. It is not charged that he interfered to prevent her selling to another, or to prevent the obtaining of a loan.

I can discover no element of fraud, oppression, or unfairness in the case.

The judgment is affirmed.

HENSHAW, J., and McFARLAND, J., concurred.