[No. 26808. Department Two. March 17, 1938.]

J. H. WALKER et al., Appellants, v. L. F. WAGNER et al., Respondents.[1]

L. H. Brown and Underwood & Campbell, for appellants.

Pettijohn & McCallum, for respondents.

ROBINSON, J.—We adopt the appellants' statement of the case as contained in their opening brief:

"Appellants, Walker, by amended complaint against respondent Wagner, alleged in substance:

"On and prior to September 23, 1935, appellants owned a farm in Lincoln county, Washington, and were in possession through a tenant. The lands were subject to a mortgage to The Prudential Life Insurance Company of America hereinafter referred to as 'The Prudential,' and which mortgage was in process of foreclosure in the Lincoln county court.

[1]Reported in 77 P. (2d) 370.

"On September 23, 1935, a decree of foreclosure of such mortgage was duly entered and the land ordered sold in satisfaction thereof. The sheriff's sale was set for October 26, 1935, and the amount on the execution was $4613.67.

"During the progress of the foreclosure, the appellants, who were wholly without funds, were trying to negotiate a loan to pay off the Prudential and were also trying to interest bidders in the sale, so that the land would bring the best price possible, if the appellants could not get a loan. Appellants had been wholly unsuccessful in such efforts when on October 3, 1935, some three weeks before the sale, respondent Wagner approached the appellants and offered to bid at the sale up to $5800, all for the benefit of the appellants, providing appellants would cease their efforts to interest others in the sale or obtain aid elsewhere and would not, pending the sale, talk to anyone about the sale. To this appellants agreed.

"Appellants, relying on respondent's promise, ceased their efforts to interest others and spoke not of the sale, though they believed they could have found aid elsewhere.

"Appellants allege that respondent's promise was made as a means of deceit, to discourage bidding, and without intention on respondent's part to perform.

"Respondent Wagner failed in his promise. True, he attended the sale, but bid only one cent more than the Prudential bid of $4613.67. On his bid of $4613.68, respondent, as successful bidder, received a sheriff's certificate. On November 12th following, the sale was confirmed.

"On November 23rd following, respondent Wagner repudiated his agreement and violated his trust when he told appellants that he owned the sheriff's certificate without obligation to the appellants, but that he would give them $100 for a deed, and if they did not do that, they would get nothing.

"Appellants, being inexperienced in such matters and believing respondent knew whereof he spoke, gave respondent such a deed and received the $100. Not until shortly before this action was commenced did appellants discover that their rights were other

than as stated by respondents. Thereupon, and in October, 1936, they brought this action as an equitable redemption.

"In the meantime, respondents had received and appropriated from crops, summerfallow, and rentals from said land $1656.65. Considering these items, interest and other proper charges, the appellants tendered $3305, the approximate amount necessary to redeem, and deposited the same in court.

"Appellants prayed for a declaration of trust and for suitable equitable relief.

"The court sustained a demurrer to that complaint and after refusal to plead further, entered a judgment of dismissal, from which this appeal is prosecuted."

In opening their argument, the appellants say:

"The sole question to be determined is whether the amended complaint states a cause of action. . . .

"We have asked the court to declare that when the respondent bid at such sale, he became charged as a constructive trustee of the property in question for the benefit of the appellants."

The next step in the argument is concisely expressed by the following excerpt therefrom:

"If such trust be established, it cannot be gainsaid that a true fiduciary relation existed between respondent and appellants from the time of the sheriff's sale, and that all subsequent actions of the respondent are to be tested by the requirements applying to such fiduciaries. . . ."

It is then contended that, in taking the deed, Wagner violated the fiduciary relation which, it is said, came into being at the time he made the bid, and that equity should, therefore, require him to turn back the property to the appellants upon receiving from them the amount he bid at the foreclosure sale, with interest, less the value of what he received from the land, while in possession, in the way of crops, summerfallow, and rentals.

It is evident that the first and most important question for examination is: Did Wagner become a trustee of the land for the appellants when he bid it in at the foreclosure sale and received the certificate of purchase?

In considering this matter, it must be kept in mind that it is not alleged or claimed that Wagner agreed to buy in the property for the appellants. It was not contemplated that they should get the land, or, more accurately speaking, that Wagner should save the land for them. He was merely to buy in the land for $5,800, and the benefit which they were to receive was the overplus, which, since the judgment was for $4,613.67, would have been $1,186.33. Had he done so, the contract would have been performed according to its terms. He, however, bid $4,613.68, so that the overplus was but one cent.

It follows, if we forget the statute of frauds and for the sake of argument regard the contract as valid, that, by reason of the breach, the appellants sustained a monetary loss of $1,186.32, but by no possibility were they wrongfully deprived of any title or interest in the land, for it was agreed that Wagner was to acquire the certificate of purchase for himself, not for them. The only breach was in not bidding the required amount. The only loss which flowed from it was a monetary loss.

Appellants, however in an attempt to raise a constructive trust, pleaded fraud in the following allegation:

"Plaintiffs now allege that said promise was made by defendant merely as a means of deceiving these plaintiffs and for the purpose of discouraging bidding at said sale, and so that defendant might thereby take advantage of plaintiffs and with no intention on the part of said defendant of performing the same."

Assuming, and the assumption is a large one, that this is a sufficient pleading of fraud to take an oral contract out of the statute of frauds, do these allegations, which, for our present purpose, must be regarded as true, add anything to appellants' case? Of what were they defrauded? Not of any interest in land, but merely of the possibility that, if Wagner had not led them to believe that he would bid $5,800, they might have found someone else who would have done so, or, at least, who would have made a bid which would have given them a substantial overplus. That is to say, whether Wagner's act be regarded as a mere breach of contract or a wilful and deliberate fraud, its result was not to deprive the appellants of title or interest in land, but merely to cause them a monetary loss.

Appellants rightly say that *Ryan v. Dox,* 34 N. Y. 307, 90 Am. Dec. 696, decided in 1866, is "one of the early and ruling cases" dealing with constructive frauds in the purchase of lands at judicial sales. In fact, it may justly be called the leading American case. In that case, Ryan and Nevins prayed that the court declare that Dox, who had legal title to certain lands, held the same as their constructive trustee. They had formerly owned the lands, which were worth more than four thousand dollars. They had mortgaged them for eight hundred dollars, and, when they were about to be sold on foreclosure, they went to Dox for help. They alleged:

"That said Dox did then profess and declare a willingness to help said plaintiffs for such purpose, and did then and there agree with the said plaintiffs that, on the day of said sale, he, the said Dox, would attend the same and bid off and purchase the said premises at such sale, upon the express agreement and understanding, between the plaintiffs and said Dox, that such bidding and purchase, if made by the said Dox, should be for the benefit and advantage of these plaintiffs,

124

and the plaintiffs upon such agreement and understanding agreed that they would not find any other one to go their friend at the said sale, and to bid in and purchase the said premises for them; and that *it was expressly understood and agreed between the plaintiffs and said Dox, that if he.became the purchaser of said premises at said sale he should take the deed of the same from the said master in his own name, but only by way of and as security to himself for what money he should have to advance and pay on such purchase, and with the agreement, promise and undertaking between said Dox and these plaintiffs, that whenever these plaintiffs should repay him the amount which he should pay to procure and effect such purchase and to get the deed therefor, with the interest thereon, and a reasonable compensation for his services therein, he, the said Dox, should convey the said premises to these plaintiffs and again vest the title thereto in them, and should in the meantime hold the said premises in his own name as security only for the said moneys, and always subject to the above agreement and defeasance.* That in pursuance of said agreement, said Dox attended said sale, and bid off the same for the sum of $100, he being the only bidder at said sale, and the same was struck off to him and he received the deed therefor . . . And the plaintiffs averred that such was the fact, and that in truth said Dox did bid off and purchase the said premises for these plaintiffs, and to save the same for them, and took the deed in his own name, only as such security as aforesaid, and that in consequence of such understanding other persons abstained from bidding on said premises, and the same was struck off to said Dox without any opposing bid, although the plaintiffs aver that the same were then worth four thousand dollars and upwards. And the plaintiffs also averred that if they had not relied upon said agreement, promise and undertaking of said Dox, they would not have allowed the said premises to have been struck off for the said sum of $100, but could have found other persons to have purchased the said premises, and saved the same from sacrifice, but that as said agreement was made more than a month before said sale, these plaintiffs relied upon it and made

no other effort to procure the money, or the assistance of friends to save and buy said premises." (Italics ours.)

In that case, as appears from the above quotation, Dox had agreed to acquire title for the plaintiffs. He, however, took it in his own name and refused to surrender it. The statute of frauds barred any relief at law, but equity said that Dox secured the legal title by a fraud; that in good conscience the title belonged to Ryan and Nevins; and that it would construct a trust under the circumstances, declaring that Dox was a mere trustee for Ryan and Nevins, and direct him, by a decree *in personam,* to convey the legal title to them upon their reimbursing him for his expenses and services in the matter.

But, in this case, Wagner did not agree to acquire title for the appellants. It was the agreement that he should purchase for himself. His breach was only in failing to bid the agreed price; and, if, as the appellants allege, that was, in fact, a fraud, because he never intended to bid that amount, it did not deprive them of any title in the land, but, at the most, of an overplus in money which someone else might have been induced to bid had appellants not been lulled into inaction by his fraud and deceit. There was no beneficial ownership of the certificate of purchase in the appellants, for it was agreed that it should belong to Wagner. To declare a trust in favor of appellants would, obviously, directly contradict the contract they plead and upon which they rely. Wagner got complete legal title to the certificate, as contemplated by the contract. He merely paid for it a lesser sum than he had agreed to pay.

The appellants also cite *Chadwick v. Arnold,* 34 Utah 48, 95 Pac. 527. They show in their brief that this is

a case of the same type as *Ryan v. Dox, supra,* for they say:

"*Chadwick v. Arnold, supra,* was the familiar case of a promise to buy in at sheriff's sale for the benefit of the record owner, the reliance on such promise and its later repudiation by the promisor."

Another case cited by appellants is *Silvers v. Howard,* 106 Kan. 762, 190 Pac. 1. A son conveyed lands to his mother in order that she might mortgage them to raise money for other of her children, but it was alleged upon the oral agreement that, when the mortgage should be paid, the mother would reconvey to the son. Upon her refusal to reconvey to his heirs, the court raised a constructive trust, holding that, in view of the confidential relation between mother and son, the fraud was sufficient to support it. But here, again, the son had been deprived of title by an oral promise which his mother refused to carry out.

Appellants further rely upon *Harras v. Harras,* 60 Wash. 258, 110 Pac. 1085. This is a case where one brother agreed to attend the sale and purchase land for the benefit of both. Having purchased, he kept it as his own. Again, we call attention to the fact that it was not contemplated that Wagner should acquire the certificate of purchase for appellants, but for himself, and that his only breach was that he did not bid the amount he had agreed to bid, resulting in a loss of money, not title.

Appellants also rely upon *Hansen v. Hansen,* 110 Wash. 276, 188 Pac. 460. This is another case where the wrong complained of had resulted in loss of title.

Finally, on this branch of the case, we find nothing in our own decisions which would have warranted a court in holding that Wagner was a trustee, had an action been brought to have him so declared immediately after he bid in the property at the sale.

The case of *Farrell v. Mentzer*, 102 Wash. 629, 174 Pac. 482, which is itself an authority against appellants' contention, collects and analyzes our decisions on this subject prior to 1918. The rules and principles therein announced have not, we believe, been departed from in any subsequent case.

Appellant's major proposition is unsound. Wagner did not become a trustee when he bid in the property at the foreclosure sale and was not in any sense a trustee for the appellants at the time he bargained for and secured the deed on November 23, 1935. Nor did he then stand in any other relation which the law denominates as fiduciary. There is no confidential relation between a mortgagor and a mortgagee; Tiffany on Real Property, (2d ed.), § 621; *De Martin v. Phelan,* 47 Fed. 761. See, also, *De Martin v. Phelan,* 115 Cal. 538, 47 Pac. 356, 56 Am. St. 115. And we perceive no reason why one should be held to exist between a mortgagor and a purchaser at a foreclosure sale. A fiduciary relation is dual in its nature. It cannot be created by one person merely deciding that he will repose great trust and confidence in a stranger. There must be some rational basis for the trust imposed. Had any particular relation of trust and confidence existed between the appellants and Wagner prior to the transactions set out in the complaint, it should have been— indeed, it must have been—thoroughly and completely dissipated when Wagner, instead of carrying out his agreement, bid just one cent over and above the judgment.

We are compelled to conclude, in the absence of specific allegations of fact to the contrary, that the parties dealt pretty much at arm's length on November 23rd. There is no allegation that the appellants were illiterate or incapable of understanding the nature

of the deed which they then executed, but merely that they were inexperienced in such matters. There is no allegation of the value of the property, unless it is to be inferred from the allegation that Wagner offered to bid $5,800. But this, appellants say, he never intended to do. It is alleged that it produced $1,600 during the year after Wagner acquired it. But this is no safe guide to its value. That may have been a very exceptional and fruitful year. In any event, mere inadequacy of price does not furnish sufficient ground to set aside a contract. *Puget Mill Co. v. Kerry*, 183 Wash. 542, 49 P. (2d) 57, 100 A. L. R. 1220.

We are constrained to hold that the allegations of the complaint neither furnish the basis for the declaration of a constructive trust nor make out a sufficient case to set aside so formal an instrument as a deed.

The judgment appealed from is affirmed.

STEINERT, C. J., BEALS, MILLARD, and BLAKE, JJ., concur.