## FREE v. FARNWORTH et al.

No. 6326.  Decided December 30, 1943.  (144 P. 2d 532.)

*E. LeRoy Shields, W. Q. Van Cott, D. Eugene Livingston,* and *Grant H. Bagley,* all of Salt Lake City, for appellant.

*D. A. Skeen, Chris Matheson,* and *Robert L. Cranmer,* all of Salt Lake City, for respondent.

McDONOUGH, Justice.

The plaintiff and respondent Roy Free brought an action in the district court of Davis county to quiet title to certain real property situated in said county, more particularly described in the amended complaint. While the complaint as amended alleges title generally, respondent relied on a tax deed based on a bid at the May sale in 1939 at which sale he paid $643.40. The following were named defendants: (a) Alice Farnworth who was formerly record owner; (b) Swen C. Jensen, Christ Jensen and Alma Jensen, his wife, who were purchasers under contract of sale and exchange from Alice Farnworth and her late husband; (c) the United States and the Regional Agricultural Credit Corporation of

Salt Lake City, which had docketed a judgment against Alice Farnworth for nearly $1,500 and which claimed a lien against the property for said amount prior in right to the mortgage; (d) D. A. Skeen, who had a mortgage of record in the sum of $1,000; and (e) other persons whose rights are not in controversy on this appeal. Alice Farnworth and D. A. Skeen did not join in the appeal.

By its answer the Regional Agricultural Credit Corporation denied the title claims of plaintiff, and it alleged that Alice Farnworth was the owner in fee simple, that its judgment lien in the sum of nearly $1,500 was the paramount lien, and that whatever title plaintiff asserted was held in trust for her. By their answer, the Jensens denied that plaintiff was the actual owner. They also challenged the tax title for alleged irregularities in proceedings. They also alleged payment to the county treasurer of a sum sufficient for the delinquent taxes for the year 1933 when the property was sold, and that the treasurer failed to apply said funds on said delinquency and applied the money to subsequent taxes without the consent of the Jensens. The Jensens made the further plea that D. A. Skeen was the attorney for Alice Farnworth and that he had unsuccessfully attempted to foreclose the contract of sale, and that the bid at the tax sale was made by Free by virtue of a previous arrangement with Skeen whereby Skeen agreed to reimburse Free and pay all expenses of quieting title and then take a conveyance of title from Free. The Jensens alleged that said purchase by Free was actually for the benefit of Alice Farnworth or for D. A. Skeen, her attorney, or for both of them; and the Jensens requested the court to enter a decree that such purchase was for the benefit of all persons claiming an interest in the property.

The trial court wrote a memorandum in which it ruled that if plaintiff's purchase was actually for the benefit of either Mrs. Farnworth or Mr. Skeen, he took title as trustee and that such purchase would not operate to cut off the Regional Agricultural Credit Corporation or the Jensens. The trial

court finally decided, however, that the evidence was insufficient to make a finding that Free made the purchase for anyone other than himself, and the court entered findings, conclusions and judgment and decree in favor of plaintiff quieting his title against all of the defendants.

Only the Jensens and the Regional Agricultural Credit corporation appealed. They contend that the judgment and decree must be reversed on one or both of the following grounds: (1) That the tax proceedings leading up to the May sale were fatally defective, and that the county could not convey a clear title to plaintiff; and (2) that even if such proceedings were valid, the purchase by Free was made for and on behalf of and for the benefit of Mrs. Alice Farnworth, or on her behalf and for D. A. Skeen, and that such tax title acquired at the instance and benefit of the former record owner cannot be asserted to freeze out other lienholders.

Most of the facts are undisputed, and without going into the question of the validity of the tax title, we can predicate our decision on the second ground urged for reversal, on the basis of the facts testified to by plaintiff Roy Free. While the Jensens charged that the arrangement was fraudulently made between Free, Mrs. Farnworth and Skeen to deprive them of their contract of purchase, the unpaid balance of which was alleged to be less than the indebtedness against the property, the uncontroverted testimony of plaintiff and his admissions are such as to make it unnecessary to decide whether there was actual fraud or collusion. Free testified in substance as follows:

The Farnworths had borrowed money from him, secured by a mortgage on real estate in Salt Lake City. Mrs. Farnworth prevailed upon him to put up the money to protect her interest in the property in controversy. Skeen had done some legal work for Free, and he had also done considerable legal work for the Farnworths for which he had taken a mortgage on the property in controversy for $1,000. Free testified that he bid in the property at the May sale to protect Mrs. Farnworth; that she came to him some time, before the May sale and told him she was going to lose her

interest in the property in Davis county and needed his assistance. Later, her son came down and asked him to come to the office of his mother's attorney, D. A. Skeen, and talk things over. Free discussed the matter with Mrs. Farnworth's son and with Skeen. He knew of the judgment lien of the defendant Regional Agricultural Credit Corporation, but he was assured by Skeen that the title would be clear. He also knew of the contract with the Jensens. The tax delinquency for which the tax sale was held was for the year 1933, which the Farnworths in their contract with the Jensens had agreed to discharge.

Free also said that he never wanted the farm, and that he was concerned about getting his "money back again and having everybody satisfied." He finally agreed that he would put up the money to protect Mrs. Farnworth, and Skeen assured him he would be fair in dealing with Mrs. Farnworth. He testified that in bidding in the property he had no intention of depriving Mrs. Farnworth of any interest in the property, but that he did it to help her out; and that he did not intend to deprive D. A. Skeen of his mortgage either. To use his own language, "I did it as an accommodation all the way through; to clear the property and make a satisfactory arrangement to everybody."

He further testified that in this action D. A. Skeen was the attorney who prepared the complaint, and that he as plaintiff signed it and verified it in the office of D. A. Skeen, but that Mrs. Farnworth was to pay for the services of D. A. Skeen and that the property is her property. He also stated that Skeen accompanied him to Farmington to make the bid on the property, and as soon as they arrived back in Salt Lake City from the sale, Skeen prepared an option whereby Free agreed to sell the property to Skeen for the amount of money he had paid out, plus $50 expense. He stated that it was understood that Skeen would deal fairly with Mrs. Farnworth and that he had confidence in Skeen and felt assured that he would protect Mrs. Farnworth; and that what he did was to protect Mrs. Farnworth,

and that it was so understood in the conversation between Skeen, Mrs. Farnworth's son, and Free.

A portion of a letter by Skeen addressed to Roy Free, originally dated May 15, 1939, and accepted in writing by Free the same day is as follows:

" * * * The amount you paid in purchasing the property however constitutes a first and prior lien on this property to the extent of the amount paid and interest thereon against any claims by anybody by way of redemption or otherwise.

"I was not in a position to purchase the property at tax sale myself but I am willing, in order to protect my interest in the mortgage, to check the tax records and advise you fully with respect to the matter and to institute and prosecute for you any action necessary to quiet title to the property, in consideration of your giving to me a first and prior option to purchase this property in order that I might realize on my mortgage, by my paying to you the amount of taxes paid by you, plus legal interest at 8% and your expenses of at least $50, at any time within six months from this date; and this to be wholly without obligation on your part to pay any expense other than the actual court fees on any action instituted."

D. A. Skeen, who was named a defendant in the action, was the attorney for Mrs. Farnworth, and according to Free's understanding, Mrs. Farnworth was to pay Skeen for his legal services. The so-called option was prepared by Skeen to assure himself payment of the mortgage; Free signed it in reliance on the assurance that Skeen would deal fairly with Mrs. Farnworth, for whose benefit and in whose interest he put up the money to purchase the tax title. Skeen was present at the trial and merely offered to prove that his mortgage was unpaid. He did not testify nor attempt to controvert the testimony of Free as to the oral agreement entered into between Free, Skeen and Mrs. Farnworth, who negotiated principally through her son.

We are unable to agree with the trial court that the evidence is not sufficient to make findings of fact and conclusions of law and a decree specifying that Free holds the tax title in trust for either Alice Farnworth, the record owner, or for Mrs. Farnworth and for D. A.

Skeen, the mortgagee. Free admitted at the trial that the property belongs to Mrs. Farnworth. He did not claim to be the owner of the property, and he did not claim that his purchase cut off Mrs. Farnworth or D. A. Skeen. He expressly disclaimed any such motive or intention. It would be difficult to find more positive evidence of a trust. The proof of the trust is not furnished by the ones claiming to be the beneficiaries but by the trustee himself. His testimony clearly shows that he purchased the tax title to protect Alice Farnworth, and that he had no intention of depriving D. A. Skeen of his mortgage.

We have previously held that a mortgagor or his grantee who purchases a tax title at the May sale thereby acquires no title which he can use as a device to cut off lienholders or defeat his obligations to them. In *Hadlock et al.* v. *Benjamin Drainage District et al.*, 89 Utah 94, 53 P. 2d 1156, 1157, 106 A. L. R. 876, the grantee of the mortgagors purchased the tax deed from the county. This court declared:

" * * * The so-called purchase by the plaintiffs from Utah county was no more than the payment of the taxes in a round-about way. In form, it was a sale. In reality, it was the payment of the taxes and nothing more. * * * That one who is under a duty to pay taxes cannot add to or strengthen his title by purchasing the land at tax sale is established as settled law. * * * "

See also *Albergo* v. *Gigliotti et al.*, 96 Utah 170, 85 P. 2d 107, 129 A. L. R. 967. In the latter case it was held that a purchaser from the mortgagors cannot use his own defaults as a device for creating a tax title in the county, and then acquire the tax title and use it to defeat his obligations to to the mortgagee. In *Home Owners' Loan Corp.* v. *Stevens*, 98 Utah 126, 97 P. 2d 744, 751, we held that a person who obtains a quitclaim deed from a mortgagor prior to holding of a valid May sale puts himself in the position of the mortgagor. Such grantee of the mortgagor who purchases the tax title of the county thereby redeems the property and outstanding liens are not extinguished.

The tax statutes are not designed to permit an owner of land who has a duty to pay the taxes, to neglect the performance of such duty until tax delinquencies mature into a tax title, and then purchase the tax title to wipe out his obligations to mortgagors or other lienholders. As stated in the concurring opinion of Mr. Justice Wolfe in the last cited case:

> "No man, who, by his failure to perform his duty to another, has set in motion legal processes which would otherwise not have ensued, should be permitted to use those processes in such a way as to turn his dereliction into a triumph over the one to whom he owed the duty. * * * "

The owner of property can work no different result by using some third person as a nominee or instrumentality. The method by which a third person is used as an instrumentality is immaterial. In this case Mrs. Farnworth induced the plaintiff Roy Free to furnish the money for her and to act as a bidder at the May sale to protect her interests, and he stated positively that he had no intention of depriving her of the property.

A bona fide purchaser at a valid May sale does not act to protect the interests of the record owner whose neglect resulted in the tax title. His interest is adverse to the record owner, and he seeks to acquire a new title from the county which will defeat the title of the record owner and all other persons including lienholders. Such bona fide bidder does not act to protect the interests of the person who defaulted in the payment of taxes nor in behalf of anyone except himself.

Free acted as the undisclosed trustee and instrumentality for Mrs. Farnworth. The fact that he also acted for her attorney who was a junior lienholder did not make him any less the trustee for Mrs. Farnworth. It is true that Mrs. Farnworth did not furnish the money. If she had, Free could not assert any claim or interest, for in such case he would merely have acted as her agent, and there would have been a resulting trust in favor of Mrs.

Farnworth, which would have operated as a redemption. In this case, Free, the trustee, furnished the money, and he expected to be reimbursed with interest plus $50. He was to pay no counsel fees in any action brought to "clear the title," which in this case would operate to wipe out other lienholders. As trustee who furnished the money he would merely acquire a prior lien for the sum he advanced to divest the county of the tax title.

As trustee for Mrs. Farnworth, Free could not quiet title against her and destroy her interest in the property. While the suit to quiet title was brought in the usual form, the admitted fact is that Skeen, who was, it appears, the real attorney for plaintiff, named himself a defendant and also named his client Alice Farnworth a defendant. As plaintiff, Free sued the two persons whom he acknowledged at the trial to be the beneficiaries of his bid at the May sale. Of course, others were joined as defendants to enable the two defendants who were beneficiaries to defeat the other defendants. The testimony of Roy Free, the ostensible plaintiff, indicates that defendants Alice Farnworth and D. A. Skeen, her attorney, were the real parties in interest for whose benefit the suit was brought. Obviously, they could not have been joined as plaintiffs without precluding Free from pleading a good cause of action in a suit to quiet title if the facts were correctly stated.

For the reasons stated, the judgment must be reversed. The only remaining question is, What are the rights and obligations of the respective parties ? While Free is trustee for Mrs. Farnworth, he advanced his own money, which operated to divest the county of its claim of tax title. The tax deed he obtained from the county constitutes merely a first lien against the property as security for repayment with legal interest only, of the sum of $643.40 paid by Free to Davis county to extinguish tax lien claims. The appellants have urged not only that Free acted as trustee for Mrs. Farnworth or for her and Skeen, but that the tax title is fatally defective because of faulty and

ambiguous descriptions in tax proceedings and for other alleged failures on the part of public officials to comply with the mandates of the statutes. Without passing on the question of the general invalidity of the tax title, since the appellants urge that the tax title is fatally defective, we shall leave the parties in the same situation as if the tax title had failed.

Since the order of the priority of the claims and rights of the respective lienholders and of the Jensens has not been adjudicated, we make no determination as to such matter. The only lien as to which we make any adjudication of priority is the equitable lien of respondent Free, which we hold to be a first lien. In the event of an execution sale or foreclosure sale by any other lienholder who has a statutory right to execution sale or to foreclose, Free should be reimbursed first out of the proceeds of sale before application of proceeds to satisfy the claim of the execution creditor. Any person claiming an interest in the property has a right to redeem by reimbursing Free, not on the basis of his agreement with defendant Skeen, but for the amount of money actually paid to Davis county with interest thereon at the rate of 6% per annum. If redemption or reimbursement is made by a lienholder, such lienholder may add the amount to the secured indebtedness. If the contract of the Jensens is still in force, and if they make reimbursement, they are entitled to credit on their contract of purchase.

The judgment of the district court is reversed, and the cause is remanded to the district court with directions to vacate the judgment and to enter findings of fact, conclusions of law, and judgment in accordance with the views herein expressed, without prejudice to the rights of the parties other than Free to have the priority of their rights and interests determined by the court. Appellants to recover their costs.

WOLFE, C. J., and LARSON, and MOFFAT, JJ., concur.

PRATT, J., on leave of absence.