313 P.2d 808

**Elaine CROFTS, Plaintiff and Appellant,**

v.

**W. Glenn JOHNSON, Defendant and Respondent.**

**No. 8440.**

Supreme Court of Utah.

June 18, 1957.

David F. Anderson, Salt Lake City, for appellant.

Ellis J. Pickett, St. George, for respondent.

CROCKETT, Justice.

The plaintiff, Elaine Crofts, sued W. Glenn Johnson to quiet title to a home located in Kanab which she claimed under an auditor's tax deed. The trial court ruled that inasmuch as the tax payment for the auditor's deed was made by a mortgagee, any interest so acquired was held in constructive trust for Johnson, the mortgagor and legal titleholder, and entered judgment requiring conveyance of title to Johnson upon reimbursement to plaintiff for the amount paid for the tax deed plus interest. Affirmed. Costs to respondent.

Johnson had mortgaged the property in 1946. Taxes for the years 1947, 1948, 1949 and 1950 went upaid, and Johnson likewise was in default on payments on the mortgage. October 27, 1950, plaintiff's father, William J. Mackelprang, purchased the mortgage from the bank, taking an assignment thereof. He made abortive attempts to foreclose the mortgage but did not obtain service upon Johnson. In December, 1950, after removing tenants who were in possession under contract with Johnson, plaintiff Elaine Crofts who had succeeded to the interest of her father, moved into the prop-

2. Utah State Building & Loan Ass'n v. Perkins, 53 Utah 474, 487, 173 P. 950.

erty, where she has resided since. At the May sale in 1952, which was based upon the expiration of the period of redemption for delinquent 1947 taxes, Mr. Mackelprang bid in the property for $262.45 accrued taxes, penalties, interest and costs for the years 1947 through 1951.

Johnson claims that Mrs. Crofts holds the position of a tenant whose rents should have been available to pay the taxes and protect the property, or at least was a mortgagee in possession owing a duty to pay the taxes and protect it. There is nothing to indicate that Crofts' possession was under any contract with Johnson. It is undisputed that her possession was hostile and adverse to him.

The question for our consideration is whether a mortgagee can acquire a title superior to and divest his mortgagor of title by buying in the property at a tax sale.

The most challenging aspect of the argument in favor of the right of the mortgagee to do so is that such privilege is open to any third person to so purchase and divest them both. Therefore, why not let the mortgagee do it? Why should he alone be disqualified from thus purchasing the property in which he already has an interest at tax sale and thus protecting it from acquisition by others? This reasoning is not without some merit, and indeed gives us pause. However, other considerations herein discussed, together with the fact that the rights of the mortgagor and mortgagee inter se should be determined upon considerations between themselves, impel us to the conclusion we have reached.

The weight of authority is that a mortgagee cannot by purchasing a tax title obtain the property against his mortgagor.[1] The reasoning underlying this rule stems from the relationship between the parties and considerations of public policy. The mortgagee has the right either expressed in his contract or implied because of his interest in the property, to pay the taxes or redeem the property from tax sale to protect it. Illustrative of this is the case of Ragor v. Lomax:[2]

"* * * It may, it is true, in all cases be the duty of the mortgagor, as between himself and the mortgagee, to pay the taxes upon the land, and to keep the same free from liens which will affect the security of the mortgagee. But while it may not be the duty of the mortgagee to pay the taxes it is clearly his right to do so, for he has a manifest interest in the protection of his mortgage title. In the land both the mortgagor and the mortgagee have an interest * * * the protection of which is for the benefit of both, but the

---

1. See Annotation 140 A.L.R. 295 et seq.; Jones on Mortgages, 8th Ed., Secs. 882, 883, Vol. 2; Thompson on Real Property, Sec. 2919, Vol. 5.

lien of the state for taxes is superior to the right of each, and if one or the other does not discharge it, the land will be sold and the interest will be extinguished. The mortgagee has an interest in discharging the tax lien and a right to discharge it, and the sum that he pays to discharge it goes to increase the amount of his encumbrance, even if not so agreed in the mortgage, for it is the duty of the mortgagor to protect the security he has given * * *. The mortgagee then having the right to pay, though not bound to do so, and the means of compelling repayment, if he does pay, is it not just to say that he shall be held to have paid the tax or purchased the tax title for the purpose, not of cutting off the right of the mortgagor, but of securing himself—that his act shall inure to the protection and not to the destruction of the regular title?"

■ In regard to the problem we here confront it is sometimes stated that the mortgagee and mortgagor are really not possessed of community interests in the property, but their interests are actually adverse to each other; and also that the mortgagee has no duty to pay taxes.[3] These ideas seem to spring from considering the mortgagee's situation solely in relation to the position of the mortgagor. However, if we analyze the position of the mortgagee and the mortgagor as against third parties and the public, a different picture appears. Should any third party attack the title under which both claim, they certainly have a common interest to protect against him. The same principle is applicable to taxes. While as between the two, the primary obligation to pay taxes is upon the mortgagor, and he is obliged to protect the property and the mortgagee, if the taxes are not paid, the interest of the mortgagee is also subject to forfeiture and he, so far as the taxing authority is concerned, is under an obligation to pay the taxes or lose his interest in the property, just the same as the mortgagor. Therefore, as between the mortgagee and the taxing authority the former does have a duty to pay taxes.

■ This court has recognized the generally accepted principle that one who is under a duty to pay taxes cannot shirk that duty and then take advantage of it by purchasing the land at tax sale, and that if he does so it will not strengthen his title.[4]

The cases make a distinction as to the right of the mortgagee to purchase tax title and assert it adverse to his mortgagor on

3. See IV American Law of Property, Sec. 16.106J for pro and con discussion of mortgagee's right to purchase tax title and assert it against mortgagor.

4. See Hadlock v. Benjamin Drainage District, 89 Utah 94, 53 P.2d 1156, 106 A.L.R. 876; Free v. Farnsworth, 105 Utah 583, 144 P.2d 532; 51 Am.Jur. Taxation, Sec. 1054.

the basis of possession.[5] It is more uniformly held that the mortgagee in possession cannot do so because his use of the property imposes a duty upon him to pay the taxes. It is here urged that this case should be determined upon the ground that the mortgagee was out of possession because she was not in possession at the time the 1947 taxes became due. However, she had moved in in 1950 and had there remained until 1952 before the purchase at tax sale took place, during all of which time these taxes were due and payable.

We fail to see the logic or propriety of permitting a mortgagee in possession to enjoy the use, or rents, profits and benefits of property and let taxes go unpaid, and then be able to purchase the property at tax sale and thereby acquire title adverse to the mortgagor. It is the policy of the law to see that all property and propertyholders bear their fair share of tax responsibility. Therefore, no incentive, even a dubious one, of being able to acquire a tax title, should be held out to the mortgagee not to pay taxes on property in which he has an interest to protect. Sound public policy should encourage both the mortgagor and the mortgagee to promptly pay the taxes on such property.

There is the further important consideration that the rule advocated by the plaintiff would prove difficult in practical application in that it augurs for inequitable results. If the mortgagee is permitted to purchase tax title and assert it against the mortgagor, there is some conflict in the authorities as to whether such taking of the security extinguishes the mortgage debt. While the better reasoning would seem to be that the debt is not extinguished, we are not here concerned with that problem. Whichever way the rule be, serious inequities might result if the mortgagee could purchase tax title and usurp the property from the mortgagor. If thus taking the property extinguishes the mortgage debt, which may well be for thousands of dollars more than the property is worth, the mortgagee would be cheated out of the balance of his debt. If the debt is not extinguished where the property has a large value in proportion to the debt, the mortgagee could purchase the property at tax sale at small cost, take from the mortgagor the asset out of which he expected to produce the proceeds to satisfy the mortgage, and still hold the mortgagor fully responsible on the debt. The potential inequities in either situation are manifest.

The rule followed by the trial court, though not without some difficulty, seems more sound and practical than the converse one (espoused in the dissenting opinion). Our rule tends to encourage those having an interest in the property to pay their taxes promptly; avoids the potential inequities discussed above, and reaches a just result

5. See Annotation 140 A.L.R. 294 et seq.

because the mortgagee is permitted to add to the mortgage debt expenditures made for protection of the property plus interest thereon.[6]

WADE and HENRIOD, JJ., concur.

McDONOUGH, Chief Justice (dissenting).

At the outset it should be observed that if the question here were the narrow one of whether one in possession and under a duty to pay rent may neglect to pay such rent and take advantage of his default by later purchase and assertion of a new title from the sovereign in himself, I would agree that he might not do so. However that is not this case. The taxes were delinquent for four years when appellant took possession. At that time the premises were in a run down condition. Appellant reshingled the roof, replaced bricks which had fallen out, replastered two walls, painted the outside woodwork, put in cement walks, planted shrubs and flowers, put up a picket fence, put in a picture window, repapered one room, and did electrical repairing. While the trial court found that certain repairs and improvements of the property were made by appellant, no finding as to their value was made. However, it is reasonable to infer from the evidence that they were equal to the reasonable rental value of the property during occupancy until the date of sale. Under such circumstances, it cannot be said that the appellant was under a duty to pay the taxes which had accrued prior to her entry.

Nor is the prevailing opinion based on the narrow ground that she had such duty. It broadly adopts the rule stated in the annotation at 140 A.L.R. 295, 302 to be the weight of authority, viz. that a mortgagee who has merely a lien on the mortgaged property cannot, so long as the relation of mortgagor and mortgagee exists, obtain title to the property as against the mortgagor by means of a tax sale. Probably the reasoning most often followed in these cases springs from the fact that the mortgagee frequently has the power, if not the duty, either under his contract or under statute, to pay the taxes at the time due or redeem the property from tax sale to protect his mortgage interest. Typical of these cases is the decision of Ragor v. Lomax, 1887, 22 Ill.App. 628, from which an extensive quotation is employed in the court's opinion.

Some of the cases referred to in the cited annotation applying this principle are distinguishable upon their facts from the present case. Pearce v. Montague, 209 N.C. 42, 182 S.E. 707, for instance, holds that the mortgagor's equity of redemption cannot be

6. Utah State Building & Loan Ass'n v. Perkins, 53 Utah 474, 487, 173 P. 950; Citizens Sav. Bank v. Guaranty Loan Co., 62 R.I. 448, 6 A.2d 688, 123 A.L.R. 1248.

cut off by a purchase of the title at tax sale by the mortgagee within the period of redemption. Such is not the case here, for Johnson, under our statutes, had no preferential rights as to the property at the time it was purchased by Mrs. Crofts. Inapplicable also are cases similar to Taylor v. Snyder, Walk Ch., Mich., 490, wherein one who conveyed the property, taking back a mortgage from the grantee, purchased the tax deed for taxes which were a lien upon the property at the time the deed was given.

Also included in the A.L.R. summation of weight of authority are instances where the mortgagee was agent for the mortgagor for collection of rents and payment of taxes, Wall v. Hamner, 182 La. 1049, 162 So. 769; where one beneficiary under a trust was held unable to acquire a title free from the interest of other beneficiaries by purchasing certificates of sale, Frierson v. Branch, 30 Ark. 453; where the mortgagee intended only to redeem the property and not to acquire an interest adverse to his mortgagor, Martin v. Swofford, 59· Miss. 328.

Criticism of the reasoning of the majority view is found in IV American Law of Property, Sec. 16.106J:

"Several reasons have been advanced for denying to a mortgagee the ability to acquire a new and independent title to the mortgaged property good against the mortgagor and other mortgagees. Occasionally it is said that the mortgagee is like a trustee and therefore is debarred from founding a title on the tax sale in opposition to the mortgagor or other mortgagees. But the mortgagee may buy in at even his own court foreclosure sale and, consequently, even if it were true that he is a trustee, which he is not, it is difficult to see why purchase at a tax sale would be a breach of any fiduciary obligation owed to the mortgagor, and, even more so, to other mortgagees. Sometimes the analogy of joint tennants is invoked. But each joint tenant has a duty to pay the taxes and therefore as to them the general· principle applies that one cannot profit by failing to do his duty. There is no duty on a mortgagee not in possession, in the absence of an express contract running either to the mortgagor or to another mortgagee, to pay the taxes, and therefore that reason fails. Still other courts stress the community of interest of the parties in preserving the estate by the payment of taxes, drawing the conclusion therefrom that it would be inequitable conduct to acquire and assert a tax title against the others, or that presumably it is paid for the common protection. The last is probably contrary to fact. Just why it is inequitable when there is neither a contractual duty nor one arising out of their relationship to pay the taxes is not explained. And the common

derivation of their interests in the land does not create a common interest but rather antagonistic interests, certainly as between two mortgagees. * * * [Citing 46 Yale L.J. 334, 338 (1936)]

"Another suggestion is expressed legalistically by arguing that the rule preventing tax title purchase by one who owes a duty to another person to pay them should be broadened out to include all who owe a duty to the public to pay taxes. Such a duty is then found in the fact that the mortgagee, if he does not pay them, will lose his entire interest in the property. Probably the same idea, but more broadly based, is expressed by saying that it is against public policy to allow the mortgagee to purchase at the tax sale and gain an advantage by so doing in that it would encourage him to fail to take advantage of his privilege to pay taxes. It is to the interest of the state that taxes be paid promptly, and since the mortgagee is fully protected by his privilege of paying when they are due, he should not be encouraged to fail to take advantage of that privilege. But this is an argument that cuts both ways, [i. e. if there was a possibility that mortgagee could obtain clear tax title, the mortgagor would be encouraged to pay taxes more promptly] and the incentive in any event is speculative and dubious."

The case of Hadlock v. Benjamin Drainage District, 89 Utah 94, 53 P.2d 1156, 106 A.L.R. 876, is cited by counsel as apparently in accord with the claimed majority rule. Several bases for the holding in that case are advanced by the court in the two of the four written opinions in the case which constitute the majority holding. In that case, the mortgagee received a quitclaim deed from the mortgagor and brought a tax deed to the property from the county within the time allowed under the existing statutes for redemption. Another lienholder, the Drainage District, was named defendant in a quiet title action, and this court held that the transaction between the mortgagee and the county was in fact a payment of taxes rather than a sale, which would cut off the rights of the Drainage District. Justice Elias Hansen stressed the fact that under Laws of Utah 1921, chap. 140, p. 384 (R.S. Utah 1933, 80–10–68) the county had the power, if not the duty, to permit a redemption from any sale where the property had been sold to the county, indicated that the county commissioners were without power to deliver a deed free of Drainage District taxes, and construed the deed as limited to a release of the county's interest on redemption. That provision of the code was eliminated by Laws of Utah 1949, chap. 82 (U.C.A.1953, 59–10–64) and there is no question here but that the purchase by Mrs. Crofts took place after the time for redemption from the county had run as against Mr.

Johnson and his mortgagee. Therefore, if the holding of the Hadlock case can be said to rest entirely upon this ground, it does not influence the reasoning in this case at all. Another basis of the reasoning is that the mortgagee was the grantee of the mortgagor and hence must take subject to the latter's disabilities to assert a deed which would eliminate the rights of his creditors. Such, likewise, is not the case before us. Considerable emphasis was laid upon the fact that the adverse party to the quiet title suit was a lienholder affected with a public interest; in the present case, we need not determine title as between two lienholders, nor is any public corporation here involved. The sole question before us now is whether a mortgagee can acquire a title superior to his mortgagor by buying the property at tax sale.

The reason why an owner of land, or anyone—tenant, agent, or mortgagee—having a contractual or quasi-contractual duty to pay the taxes, cannot assert that he has received a new title from the sovereign free from the land's former encumbrances is because of the principle of estoppel. The title which one so positioned receives from the county is the same as the one which the purchaser receives, but the courts will not permit the assertion of the new title as against one to whom he owed a duty of protection by the payment of taxes. Thus, an owner indebted to a mortgagee cannot permit the destruction of the security which he has pledged by failing to pay his taxes and then buying a new title from the county.

In the present case the mortgagee made no promises, express or implied, to pay the taxes upon the property. The mortgagor was not misled as to the relationship between the two; he had no right to rely upon the mortgagee's securing his property to him by paying taxes which he allowed to become delinquent, and the record indicates that he did not so rely, and, in fact, neglected to pay either taxes or mortgage payments and did not assert any interest in the property until the complaint in the present action was served upon him. The relation between a mortgagee and mortgagor is not fiduciary. De Martin v. Phelan, 115 Cal. 538, 47 P. 356, 56 Am.St.Rep. 115. Mr. Mackelprang had neither possession nor right of possession at the time the 1947 taxes became due. Neither he nor his daughter, Mrs. Crofts, can be held liable as having any title in the land, as our statute provides that a mortgagee has only a lien upon the property. Nothing appears in the record to convince us that there was any unfair dealing upon the part of the mortgagee to which equity might attach an estoppel.

Although the authorities are split upon the question, 140 A.L.R. 294 annotation, those allowing the mortgagee to purchase the tax title as a stranger to the property, where nothing appears which should impose upon him a duty or raise an estoppel in

favor of the person contesting his title, seem to the writer the better reasoned.

The judgment should, in my opinion, be reversed.

WORTHEN, J., concurs in the views expressed in the dissenting opinion of McDONOUGH, C. J.