CITIZENS SAVINGS BANK *vs.* GUARANTY LOAN COMPANY *et al.*

JUNE 6, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Flynn, C. J.   This action in assumpsit was brought by the Citizens Savings Bank, as mortgagee, to recover from the Guaranty Loan Company, which was *not* the mortgagor, the balance of an alleged mortgage indebtedness due to the plaintiff, after crediting the proceeds of a foreclosure sale held under the power of sale contained in a mortgage of certain real estate. The other two defendants are the duly appointed receivers of the defendant company.

By agreement of the parties, the case was tried in the superior court together with a petition in equity whereby the Citizens Savings Bank sought, in the receivership proceedings, to be subrogated to the preference of the city in relation to certain taxes assessed against the realty, which the bank had paid merely to protect its security under the

mortgage. The trial justice rendered a decision in the law case in favor of the defendants, and it is before us upon the plaintiff's exception to that decision, which is the only exception pressed.

We shall consider the instant case as if it were tried separately, because it is an *action at law* and is to be determined according to principles of law and not of equity. Unless otherwise stated, the plaintiff will hereinafter be referred to as "the bank"; the Guaranty Loan Company as "the company"; and the two other defendants as "the receivers".

The declaration is substantially in two counts. The first specially alleges the making and delivery by the defendant company to the bank of a promissory note in the sum of $25,000; the terms of the note and the making of several partial payments of principal and interest thereon; a default thereafter in payments of principal and interest; and a refusal by the defendant company or its receivers to pay the amount of the alleged indebtedness then due, to wit, $18,125.

The first paragraph of the second count is also based upon the promissory note as described in the first count. The second paragraph of the second count is based entirely on an alleged indebtedness of the defendant company to the plaintiff in the sum of $12,000 "for so much money before that time had and received for the use of the plaintiff, and also for so much money before that time paid, laid out and expended to and for the said defendant at its instance and request. . . ." Attached to the declaration was a copy of the original mortgage note.

The defendants' demurrer called attention to the fact that defendants were not the makers of the mortgage or note as alleged. Being overruled, they filed a plea of general issue. Upon defendants' motion the plaintiff filed a bill of particulars amplifying the claim for "money had and received" in the second paragraph of the second count, by giving an accounting of the mortgage foreclosure sale "leaving a deficiency balance due of $8779.57."

From the evidence in the transcript the following facts clearly appear. On February 27, 1924 Guaranty Loan Company *Incorporated* (which was *not* the defendant company) executed and delivered to the bank a promissory note in the sum of $25,000, secured by a mortgage on certain of its real estate. Subsequently the mortgagor conveyed the mortgaged real estate by deed to the defendant company, but the latter did not expressly or otherwise assume or agree to pay the mortgage or note. Some time later, on March 10, 1931, a temporary receiver was appointed for the defendant company and on August 10, 1931 its affairs were placed in the hands of duly appointed permanent receivers, whose successors were joined herein as defendants.

Neither the defendant company nor its receivers paid the taxes assessed against this realty by the city of Providence for the years 1930, 1931, 1932 and 1933; but all of these taxes were paid by the bank solely by virtue of the covenants in the mortgage and to protect the security of the mortgage debt. The bank on several occasions requested the receivers to seek permission of the equity court to reimburse the bank, out of the general receivership fund, for the payments of such taxes. However, the receivers made no such request to the court; and no payment to the bank on account of such taxes was ever ordered by the court or made by the receivers.

The bank did not, as it alleged in the declaration, pay any of these taxes "at the instance or request of" the defendant company or its receivers; nor did it pay them as a result of any agreement with defendants or through any previous permission or order of the equity court, or by any mistake or as a result of misrepresentation by defendants. The bank later, by motion within the receivership proceedings, sought and obtained permission to foreclose the mortgage upon the company's real estate; a sale thereof was duly held under the power of sale in the mortgage, at which the real estate was purchased for the sum of $20,000 by the Bay Realty

Company, which was controlled by the bank and was admittedly its nominee; and possession thereof passed from the receivers to the bank's nominee.

Thereafter, the bank, alleging itself to be a creditor of the defendant company by virtue of the *mortgage deficiency,* sought and received permission to file its claim with the receivers for the balance due upon the whole mortgage indebtedness after crediting the proceeds from the foreclosure sale. This claim was apparently filed April 24, 1935 and included, as a part of the entire mortgage deficiency, the amounts paid by the bank to the city of Providence for taxes plus interest, as well as certain other foreclosure expenses. The claim thus filed was promptly disallowed by the receivers on April 26, 1935. The bank then, within the time limit fixed by the decree of the equity court for plaintiff to begin suit on this disallowed claim, commenced the instant action at law to establish its claim as filed.

The evidence further shows that no claim for any taxes was ever filed in the receivership proceedings by or on behalf of the city; and that the bank, as an alleged successor to the city's statutory right of preference, filed no specific claim solely for the taxes paid by the bank.

No charge of any kind was ever made, and no account was ever set up by the bank on its books, against the defendant company or its receivers. On the contrary, the bank's accounts and records were carried in the name of the real mortgagor. These payments for taxes were entered by the bank on its records of the original mortgage account, and were intended by the bank to be added to, and were actually made a part of, the entire mortgage indebtedness. It also appeared that, after the purchase of the property by the bank's agency at the foreclosure sale, the value of the property was written down by the bank on its books to about $18,000; that the taxes paid by the bank were written off on the expense account or "to profit and loss." However, they were included as part of the mortgage "deficiency" claim as filed.

The trial justice found among other facts that neither the defendant company nor its receivers had executed or assumed or otherwise agreed to pay the mortgage or mortgage note; and that the "plaintiff has failed to satisfy us by a fair preponderance of the evidence that the defendant Guaranty Loan Company or its receivers undertook and promised as set forth in its declaration. Decision for defendants for their costs."

We have examined the pleadings, transcript of evidence and the rescript of the trial justice's decision and we cannot say that such decision was clearly wrong. The sole contention in the brief for the bank is that the trial justice was clearly wrong in refusing to give it a decision for the amount of the taxes, plus interest, under the common counts. The brief concedes that there is no evidence to justify a finding of liability against the defendants for the mortgagor's debts; its one contention is: "We only claim liability in the action at law under the common counts by reason of the payment of the taxes at the instance of and for the benefit of the debtor or its receivers, who are also parties-defendant in the action at law."

The sufficient answer to this contention is that the bank's claim, declaration, bill of particulars and evidence show clearly, in our opinion, that the bank never based its claim or action upon any such theory. On the contrary, all of these together show that the bank deliberately elected to bring this action at law to recover the whole mortgage deficiency as *an entirety,* in all respects as if the defendants were bound by the covenants of the mortgage or some other agreement. Upon the pleadings and evidence the question of subrogation was not before the trial justice; and he found that the bank did not establish, by a fair preponderance of the evidence, the claim as alleged in the declaration. The great weight of the evidence, in our opinion, supports that conclusion.

However, if counsel for the bank, by the argument in his

brief, above quoted, would contend that mere payment of taxes by the mortgagee to protect its own security would, under any and all circumstances, necessarily require the court to render a decision therefor in an action at law brought, independently of the mortgage, against strangers to the mortgage, we would be disposed to disagree. No authority to support such a contention has been cited.

There is authority perhaps for the proposition that the law may, in a proper case, imply a promise by the defendant to pay certain kinds of obligations, even where no such promise has been proved in fact. But that is far from holding that such a promise *must necessarily* be implied in *every* case, even where taxes are involved and where the pleadings and evidence lead, in justice, to an opposite conclusion. Moreover, the question before us is not whether a trial justice might have been justified in implying in law such a promise in a proper case; rather it is whether, on the pleadings and evidence in this case, the trial justice was clearly wrong in failing to imply in law a promise by these defendants, who are not bound by the mortgage.

In that connection, the supposed contention of the bank would overlook the undisputed evidence which shows, among other facts, that the bank had foreclosed the mortgage and thereby obtained ownership of the property which was its original security; that the proceeds of the foreclosure sale were more than enough to satisfy the lien for taxes which was entitled to priority over all other liens; that the bank also had a claim for the entire mortgage deficiency (including these taxes) against the real mortgagor; and that, notwithstanding these important considerations, the bank nevertheless filed its claim for the entire mortgage deficiency and elected to bring this action therefor, not against the receivers of the real mortgagor, but against these defendants, who were strangers to the mortgage.

Further it seems that, because of the pleadings and evi-

dence here, the trial justice refused, in effect, to allow the bank to split its cause so as to permit it to recover, in an action independent of the mortgage, the amount of taxes. Obviously the bank had the right to pay these taxes *only* because of the mortgage and its covenants. Without relying on the mortgage, the bank was a mere volunteer in paying them, as there was no other agreement.

Apparently the trial justice applied here a principle of law similar to that stated in *Horrigan* v. *Wellmuth*, 77 Mo. 542. In that case the defendants were the real mortgagors and yet the court said: "The law is well settled that when a mortgagor fails to pay the taxes upon land which he has mortgaged, the mortgagee may, for the protection of his interest in the land mortgaged, and in order to preserve the same as an available security for his debt, pay the taxes, and claim the benefit of the lien of the mortgage for the amount so paid . . . . But this claim must be enforced as a part of the mortgage debt, and cannot be made the basis of an independent action against the mortgagor, as for money paid to his use . . . ." Later on the court stated as a reason for the rule: "The right to pay the taxes is one which enures to the creditor as a mortgagee, and it can only be enforced by him, therefore, in his capacity as mortgagee. Outside of the relation of mortgagor and mortgagee, the payment of the taxes of one man by another without some request, express or implied, would be such a voluntary payment as would not support an action."

A similar statement of the rule appears in 10 L. R. A. (N. S.) 679 thus: "The general rule may be stated to be that, as the amount paid for taxes, together with the amount due upon the mortgage, constitutes but a single and indivisible demand, existing only by virtue of the mortgage, and being collateral and subordinate thereto, it cannot be separated and collected in several action; therefore, a mortgagee who has paid taxes upon the encumbered property, either before or after the foreclosure of his mortgage, to protect his in-

terest therein, cannot, after the foreclosure of the mortgage, maintain an independent action against the mortgagor to recover the amount so paid, as such payment does not create a lien or liability apart from that of the mortgage . . . ." To the same effect see *Vincent* v. *Moore,* 51 Mich. 618; *Young* v. *Brand,* 15 Neb. 601; *Stone* v. *Tilley,* 100 Tex. 487; 1 Wiltsie on Mortgage Foreclosure (4th ed.) § 542; 3 Cooley, Taxation (4th ed.) § 1263; 41 C. J. 638. Several other cases also seem to recognize the underlying principle of the above rule, or at least reach a similar result. See 84 A. L. R. 1387, *et seq.*

However, in the instant case, we do not have to go so far as some of these cases, because the defendants here are strangers to the mortgage. If the above rule be well recognized and considered applicable in an action by a mortgagee against a mortgagor, we think it should apply logically for a stronger reason where, as here, the defendants are not obligated to the mortgagee on the note or by the mortgage, or by any agreement, or other circumstance to be implied, in fact or law. There perhaps are other authorities *contra* but the logic of the above-cited cases impresses us as applicable here, especially since the mortgagee, in effect, seeks to recover in an action at law, independently of the mortgage, the amount of taxes which it had no right to pay except for the mortgage, and where the defendants are not obligated under the mortgage *or other agreement.*

This reasoning and conclusion would not be inconsistent with the law expressed in *Willits* v. *Jencks Mfg. Co.,* 54 R. I. 164. That was a suit in equity for subrogation and not an action at law; and the complainant mortgagee was suing the mortgagor in receivership, and not a stranger to the mortgage, as here. It does not appear that the mortgagee in that case was suing to recover taxes independently of the mortgage. Naturally, therefore, the above-cited cases would not be considered as in point or controlling upon the court in the circumstances of that case.

Moreover, the *Willits* case does not go so far as to hold

that the mere payment of taxes by a mortgagee will *necessarily require* the court, in *all* cases, to *imply in law* a promise by the defendants to repay such taxes *regardless* of circumstances. Nor does it hold that a mortgagee who pays such taxes may in every case recover them under the common counts in an action of assumpsit, independent of the mortgage, where the defendants are strangers thereto.

Both the *Willits* case, and *Equitable Trust Co.* v. *Kelsey*, 209 Mass. 416, upon which it strongly relies, were dealing in equity with matters of subrogation involving the mortgagee and mortgagor relationships and their pleadings and facts are vitally different from the pleadings and evidence in the instant case.

The plaintiff's exception is, therefore, overruled and the case is remitted to the superior court for entry of judgment on the decision.

Moss, J., dissenting. I am unable to agree with the reasoning or decision of the court in this case and have reached an opposite conclusion.

In the opinion of the court, especially in the first half, statements are made with which I do not agree and statements concerning matters which, in my judgment, should not affect the final decision. It is true that the claim filed by the plaintiff bank in the receivership proceedings and also the bill of particulars covering the money counts of the declaration in the instant case included not only items for the taxes paid, for which alone priority of payment was asserted, but also items for unpaid mortgage indebtedness, *etc.* But I cannot see why the bank's right to recover the tax items should be adversely affected by those facts.

Nor can I see why the fact that its declaration included a count in special assumpsit on the mortgage note and a count in general assumpsit on such note and some other money counts, should adversely affect its right to recover on the money count "for so much money before that time paid, laid out and expended to and for the said defendant at its

instance and request", on which count alone, early in the trial, the plaintiff's counsel based its right to recover, abandoning all the other counts.

That count obviously is not based on a mortgage or on a promissory note, but is a count in the regular form used for many generations in England and in this country when a plaintiff is seeking to recover from a defendant, in quasi-contract or implied assumpsit, for money which the plaintiff, not as a volunteer but for the protection of his own material interest, has expended in payment of an indebtedness of the defendant. The nature of that form of action will be discussed later in this opinion.

The bank paid the taxes, for which it is seeking reimbursement, to protect its security for the mortgage debt, but I have found no proof that these taxes were paid by virtue of the covenant in the mortgage. The city tax for 1930 was not paid by the bank until May 15, 1931, after the city had advertised the mortgaged property for sale by reason of the nonpayment of that tax.

The taxes for 1931, 1932, and 1933 were not paid by the bank until its representatives had ascertained by correspondence with the receivers that the latter did not have funds available for their payment and they had begun or were just about to begin to bear interest at a high rate. The correspondence shows that the receivers did not deny and in fact, at least inferentially, admitted that it was their duty to pay the taxes, if there was money available for that purpose.

During the period while these taxes were being paid by the bank, the receivers were drawing an income from the mortgaged property; but the net returns were not sufficient to enable them to make payments on account of taxes. But in December 1934 the receivers filed a petition in the receivership proceedings stating that they had on hand, from the net receipts from the mortgaged property in rentals, enough money to enable them to pay the 1934 tax and that

the bank was insisting on its payment. The receivers therefore asked for leave of the court to pay that tax. This petition was granted and the tax for 1934 was accordingly paid by the receivers.

It should be kept in mind that all the taxes paid by the bank were assessed against the company as owner of the equity of redemption in the mortgaged property. By G. L. 1923, chap. 62, sec. 28, in force during all the period with which this case is concerned, it was provided as follows: "The collector of any tax may recover the amount thereof in an action of the case against the person taxed, . . . "; and that by G. L. 1923, chap. 64, sec. 3, it was provided that whenever any person should become insolvent, town taxes due from him should have preference, after debts or taxes due the United States and this state, over all other debts or demands. These provisions applied to the 1930 taxes, as the receivership petition against the defendant company was filed on March 10, 1931.

All the other taxes involved in this case were assessed against the company after it had gone into receivership and while the mortgaged property was in the possession of the receivers, who were collecting rents from it. These taxes were therefore expenses of the receivership, and as such were, in my judgment, entitled to priority over the ordinary debts of the insolvent company.

To pass to another ground relied on in the majority opinion, I cannot see why the bank should be prejudiced by the manner in which it kept its account relating to the matters involved in this case, especially as this caused no detriment to the defendant company or its receivers. The bank had made an investment in the mortgage; and the taxes were paid and some other payments were made to conserve that investment. It therefore seems to me natural and proper for the bank to carry these items in the same account with debits for interest on the mortgage note and credits for payments made on the principal of the mortgage note and for interest thereon, *etc.*

I cannot see why the bank should be prevented from recovering a judgment against the defendants, based on its payment of their taxes, because it did not carry these payments in a separate account against them on its books. Nor can I see why the fact that after both the mortgagor and its grantee had become insolvent and receivers had been appointed for them the bank on its books "wrote down" the value of the investment, and perhaps charged to "profit and loss" the payments which it had made of the grantee company's taxes, should affect at all its right to recover for such payments.

In my judgment the money paid out by the bank for taxes did not become a part of the indebtedness which was represented by the mortgage note and which was enforceable only against the mortgagor and which alone can properly, in my judgment, be called the mortgage indebtedness. It is true that the repayment to the mortgagee of the sums of money thus paid out for taxes was secured by a lien on the mortgaged property, because the taxes had been thus secured; and that the mortgagee was entitled, if it was necessary for its protection to do so, to repay itself, out of the proceeds of a foreclosure sale under the mortgage, for the money which it had paid out for taxes. But in every other respect the money thus paid out must be treated differently from the money covered by the mortgage note, since the taxes constituted indebtedness of the company, which had acquired the equity of redemption and had not assumed the payment of the mortgage, and did not constitute indebtedness of the mortgagor. Therefore it seems to me incorrect to say that the tax payments were made a part of the mortgage indebtedness.

It is stated in the opinion of the court, quoting from the rescript of the trial justice, that he said that the "plaintiff has failed to satisfy us by a fair preponderance of the evidence that the defendant Guaranty Loan Company or its receivers undertook and promised as set forth in its declaration. Decision for defendants for their costs."

But only a few lines before the language above quoted he said: "The bill also includes payment of $5375.96 for municipal taxes and interest thereon, which items are disposed of in Equity No. 10752 in this Court. We shall not consider in this case the items of taxes and interest thereon set forth in said bill of particulars." From this and from what follows in his rescript it is clear to my mind that, in the language quoted in the opinion of the court and set forth above, the trial justice was writing solely about the *other* parts of the declaration and not at all about the part under which the plaintiff claimed to be entitled to recover for the taxes paid and interest thereon.

He did not find that in this case the bank was or was not entitled to recover from the defendants for the taxes paid. On the contrary, he declined to make any decision as to them, preferring to deal with them in the equity case, which was being heard before him at the same time. So, in my judgment, since he made no decision of the vital question now before us, we are not hampered by the usual rule that a decision by a trial justice in a case heard before him without a jury should not be reversed, unless we are clearly convinced that his decision was erroneous.

So far as I can see, there is no material dispute as to the pertinent facts of this case and, if the matters are eliminated from consideration which I have above contended are not pertinent, the decision depends entirely upon the answer to the following question: If the owner of real estate mortgages it to secure the payment of a promissory note made by him to the mortgagee and then sells and conveys the real estate to a grantee, who takes the real estate as subject to the mortgage but without assuming the payment of the mortgage; and the mortgagee, in order to protect his security for the payment of the note, afterwards pays city taxes which have been assessed against the grantee by reason of his ownership of the real estate and which he, the grantee, has refused or is unable to pay; and the mortgagee later,

because of default in the payments due under the note, sells the real estate under foreclosure of the mortgage, and the net proceeds of the sale are not sufficient to pay the note and accrued and unpaid interest thereon, has the mortgagee a right to recover in an action at law against the grantee the amount which the mortgagee has paid for taxes as above stated, together with interest on that amount?

After a careful investigation and consideration of the legal principles and authorities bearing upon the proper answer to this question, I am convinced that an affirmative answer is required by these principles and the great weight of authority. The basic legal rule involved, which seems to me about as well established as anything in the law, is that, if A, not as a volunteer but for the protection of his own financial interest, pays a debt which B owes to C, A is entitled to recover in an action at law against B the sum of money so paid; and that the proper common-law form of action is in general assumpsit on one of the common or money counts, that for so much money "paid, laid out and expended to and for the said defendant at his instance and request", the very form of count which is contained in the declaration in the instant case and which is the one relied on by the plaintiff as a basis for a recovery against the defendants.

The authorities show clearly that this cause of action and this form of count in a declaration have been recognized as proper for many generations in England and in this country; and that it is not necessary for a recovery that the money was paid at any actual instance and request of the defendant, but that it is quite sufficient that the plaintiff, for the reasonable protection of his own financial interest, has paid a debt which is due by the defendant to a third person and which the defendant is unable or unwilling to pay. In that case a request by the defendant to the plaintiff to pay the debt and a promise by the defendant to the plaintiff to repay to the latter the amount so expended will be *implied in law.*

This doctrine was adopted by the courts of common law from the courts of equity, the common law action of assumpsit being widened so as to include not only *special* assumpsit, based on an actual contract, but also *general* assumpsit, based on a quasi-contract, implied either in fact or in law. The doctrine has been practically universally adopted and applied under the common law.

In support of this doctrine see Keener on Quasi-Contracts, pp. 388-395; Chitty on Contracts, (16th. ed.) pp. 41-52; 2 R. C. L. 776, "Assumpsit", § 33; Restatement of Law of Restitution, §§ 103, 104, and Comment (a) and Illustrations 2 and 3; *Keith* v. *Congregational Parish in Easton,* 21 Pick. 261; *Hale* v. *Huse,* 10 Gray 99; *Wells* v. *Porter,* 7 Wend. 119; *Nutter* v. *Sydenstricker,* 11 W. Va. 535, at 544 (semble); *Carlyle* v. *Bartels,* 245 Ill. App. 153, 156.

In the above citation from R. C. L. this statement is made: "But if one is compelled, or is in a situation to be compelled to pay the debt of another, the law implies a promise on the part of him for whom money is paid on which an action may be sustained; for in such a case it is not a voluntary but a compulsory payment."

In the above citations from the Restatement of the Law of Restitution, § 104, the general rule is laid down, and then, in the illustrations cited, the general rule is applied to cases arising between a mortgagee of real estate and a grantee of the equity of redemption, who has not assumed the payment of the mortgage, as follows: "2. A purchases Blackacre from B, taking it subject to an existing mortgage in favor of C which A does not assume and which B agrees to pay. A fails to pay taxes thereon for which he is not personally liable. C pays the taxes to avoid the loss of his interest. In addition to his mortgage lien, C is entitled to a lien upon the land coextensive with that which the taxing authority had prior to the payment.

"3. Same facts as in Illustration 2, except that A was personally liable for the payment of his tax to the taxing

authority. C is entitled to an action for restitution against A in addition to one for the enforcement of his lien, the Statute of Limitations running from the time of payment (see § 77)."

The same doctrine has been applied in many other comparatively early cases, in which, in my judgment, the principal question involved was the same as that in the instant case. See for example *Hogg* v. *Longstreth,* 97 Pa. St. 255; *Building Association* v. *Webb,* 12 Pa. Sup. Ct. 545; *Wells* v. *Porter,* 7 Wend. 119; *Graham* v. *Dunnigan,* 6 Duer (N. Y. Super.) 629, 630.

In the first of these cases the facts were closely parallel to those in the instant case, the only difference being that in that case the taxes were assessed against the grantee of the equity of redemption, who had not assumed the payment of the mortgage and were paid by the mortgagee *after* he had bought the mortgaged property, at foreclosure sale, for less than the mortgage debt, instead of *before* the foreclosure of the mortgage as in the instant case; and I cannot see why this difference in time should affect the result of the case.

There it was held, in a well reasoned opinion, that the mortgagee could, in an action of assumpsit for money paid, recover from the grantee of the equity of redemption the taxes assessed against the latter, but paid by the former for his own protection. At the end of the opinion the court says: "The mortgagee was compelled to pay the taxes in relief of the land purchased for his debt, the land not raising a fund sufficient to pay both liens. We are of the opinion that this is a clear case for application of the principle, that he who is compelled to pay another's debt, because of his omission to do so, may recover on the ground that the law infers that the debtor requested such payment."

In *Building Assoc.* v. *Webb, supra,* the court, at page 548, states the question at issue as follows: "Can a mortgagee maintain assumpsit against the grantee of the mortgagor for the amount of taxes assessed upon the land during the

grantee's ownership and paid out of the proceeds of a sheriff's sale under a judgment on the bond accompanying the mortgage when the effect of such distribution of the fund is to reduce the sum which otherwise would be distributable to the mortgagor?"

The court definitely answers this question in the affirmative and says, at page 550: "The taxes have been paid, but the circumstances under which they were paid give the plaintiff a right to reimbursement from the defendant as clearly as if the defendant had expressly promised to indemnify the plaintiff. Under the authorities above cited this right may be enforced in an action of assumpsit."

In the opinion of the court in the instant case its decision against the bank seems to be based, so far as it is given a *legal* basis, on the doctrine stated, really by way of *dictum*, in *Horrigan* v. *Wellmuth*, 77 Mo. 542, which is quoted from at length in that opinion; and three other cases, three textbook authorities and a note in A. L. R. are also cited in support of that doctrine.

An examination of the briefs filed by the attorneys for the respondent corporation and its receiver in the case of *Willits* v. *Jencks Mfg. Co.*, 54 R. I. 164, which is referred to in the court's opinion, shows that these attorneys relied on that very same doctrine and cited in support of it all these same authorities, except the Nebraska case, Wiltsie on Mortgage Foreclosures, and the note in 84 A. L. R., all of which add little, if any, further support. Yet this court in the *Willits* case did not apply that doctrine, but rendered a décision for the complainant corporation which, to my mind, is absolutely inconsistent therewith.

In that case a mortgagor of real estate had sold and conveyed it subject to the mortgage, and the grantee had assumed the payment of the mortgage debt. Later the mortgagee, to protect its mortgage security, paid city taxes which had been assessed on the property to the grantee, which had gone into receivership. The mortgagee then, *without pro-*

*ceeding to foreclose the mortgage,* filed a petition in the receivership proceedings to establish a claim against the respondent for the taxes paid, as a preferred claim, by subrogation to the rights which the city had had against the respondent. This court held that the petition must be sustained.

In the opinion many authorities are cited in support of the decision. One of them, which is very clearly and closely applicable to the instant case is *Dunlop* v. *James,* 174 N. Y. 411.

There a leasehold interest in land was created by a written lease in which the lessee covenanted to pay the rent and also the taxes assessed on the property, during the life of the lease, and authorized the landlord to re-enter in case of a breach of this covenant. This leasehold interest was acquired by the defendant subject to the provisions of the lease. He assigned it to a woman who mortgaged it to the plaintiff as security for the payment of money borrowed by her from him, on her bond but for the defendant's benefit, and then reassigned that leasehold interest to the defendant. He took it subject to the mortgage but without assuming the payment of the mortgage indebtedness.

The defendant neglected to pay the ground rent and taxes that afterwards accrued and became payable while he was the owner of the leasehold interest, although he was requested by the plaintiff mortgagee to pay them. The latter, to protect his interest under the mortgage and to prevent the landlord from re-entering for breach of the lease, paid the rent and taxes. It was held that by subrogation he could maintain the same action against the defendant for the rent and taxes as the landlord could have maintained.

In the opinion of the court in the instant case attention is called to the fact that the *Willits* case was a proceeding in equity, while the instant case is an action at law. But, as was observed *supra,* the right, which has now been recog-

nized for many generations, that a person who for the protection of his own property interest has paid the debt of another to a third person can recover from the debtor the amount so paid in an action in general assumpsit for money paid, laid out and expended for and to the use of another, was adopted by courts of common law from courts of equity and is based on the equitable doctrine of subrogation.

Therefore, in my judgment, the *Willits* case is an authority squarely in point in favor of a decision in the instant case that the bank is entitled to recover the sums paid for taxes, with accrued interest on such sums; and in my judgment the *Willits* case is in accord with the great weight of authority. A right of priority in payment over other claims against the defendant can only, of course, be established in a proceeding in equity. That right is involved in the proceeding which was begun by the bank's petition in the equity suit and which was heard at the same time and by the same trial justice as the instant case at law.

It is reasoned in the opinion of the court in the instant case that if the doctrine of the *Horrigan* case, *supra*, applies between the mortgagee and the mortgagor, it "should apply logically for a stronger reason", where, as here, the defendants are not obligated to the mortgagee on the note or by the mortgage, or by any agreement, or otherwise. On the contrary, as I see the matter, the line of reasoning upon which that doctrine is based wholly fails to apply to a case like the present one.

Shortly stated, that line of reasoning, as I understand it, is that the relations between the mortgagor and mortgagee are governed solely by the terms of the note and mortgage and that, therefore, if the mortgagee pays taxes on the property, he can, *as against the mortgagor,* recover the money thus paid only under the terms of the mortgage, treating that money solely as a part of the mortgage indebtedness. This reasoning has a certain plausibility; but if a grantee from the mortgagor has not, by assuming the mortgagor's

obligations and rights under the mortgage, made the mortgage, under the above line of reasoning, determinative of the personal rights and obligations between himself and the mortgagee, the line of reasoning has no application whatever, and the rules of equity and law, as to subrogation and as to the recovery of money paid to the use of another, apply.

There may be cases in which the doctrine stated in the *Horrigan* case has been extended to cover a case arising between a mortgagee and a grantee who has not assumed the obligations and rights of the mortgagor under the mortgage, but I have not been able to find one. The case of *Stone* v. *Tilley,* 100 Tex. 487, cited in the opinion of the court in the instant case, is, of all the cases which I have found, the nearest to such a case; but that involves the law of community property, prevailing in Texas, and a partition of mortgaged property; and I am not at all sure that it is in point on the question.

I do not believe that on the facts of the instant case the bank, as mortgagee, would have the right to recover from the mortgagor, as a part of the mortgage indebtedness, the taxes which were assessed against the grantee, after the grantee became the owner of the equity of redemption, and which were paid by the bank. The mortgagor did not, by the mortgage, agree to pay the taxes, the failure to pay which was simply a ground for foreclosure; and, as between the mortgagor and its grantee, it was the duty of the latter to pay the taxes assessed against it after the transfer. In my judgment everything in the instant case is in favor of the conclusion that the bank was entitled to recover from the defendant company and its receivers the money paid for taxes.

At one point in the opinion of the court the reasoning seems to be that because the bank had foreclosed the mortgage and had had the property bought in for its benefit at the sale, and "the proceeds of the sale were more than enough

to satisfy the lien for taxes which was entitled to priority over all other liens", the bank was not entitled, in an action against the company, to recover for the money which the bank had paid for the taxes. This reasoning is not convincing to me. It is my understanding that if a foreclosure sale is properly held, it makes no difference whether the property is bought by the holder of the mortgage or by another; and also that, unless prevented by a provision in a mortgage or by some agreement, a mortgagee, who has foreclosed the mortgage and has another lien on the mortgaged property besides that under the mortgage, may apply the proceeds of the foreclosure sale to the satisfaction of the two liens in whichever order he pleases. *Hutchins* v. *Reinhalter,* 23 R. I. 518.

The bank, if it had not previously made an election to apply the net proceeds of the sale to the mortgage indebtedness, clearly did so when it filed its claim in the receivership proceedings and stated that the sum of $5,375.96 represented the taxes paid and interest thereon and "was claimed to be a preferred claim."

I cannot see how the bank's right to press its claim against the company and its receivers for city taxes paid by the bank and its right of subrogation could be at all affected by the fact that the city had filed no claim in the receivership proceedings, or by the fact that the bank, after its payment of the 1930 tax, did not wait until a sale by the city of the mortgaged property was actually threatened. It did wait, as to the tax for each of the next three years, until it had ascertained that the receivers were not going to pay the tax and until the taxes would bear interest at a very high rate, if not paid. I have found no authority which says that it should have waited longer. In *Equitable Trust Co.* v. *Kelsey,* 209 Mass. 416, 95 N. E. 850, cited with approval in the opinion in the *Willits* case and very similar otherwise to the *Willits* case on the facts, it is fairly obvious that no steps whatever were taken by the tax collector against the mortgagor or its

receiver. Yet it is held that the mortgagee, on paying the tax, was subrogated to all the rights and remedies of the tax collector against the fund held by the receiver.

I am fully convinced that on the evidence submitted to the trial justice in the instant case the plaintiff was entitled to a decision in its favor against the defendants for the amount which it had paid for taxes and interest; that therefore the plaintiff's exception to the decision of the trial justice for the defendants should be sustained and that the case should be remitted to the superior court with a direction that judgment for the plaintiff be entered for the sum of $5,375.96, with further accrued interest thereon.

BAKER, J. concurs in the dissenting opinion of Moss, J.

*Benjamin F. Lindemuth, John W. Baker, Tillinghast, Collins & Tanner, Russell P. Jones,* for Citizens Savings Bank.

*John P. Hartigan,* Attorney General, *John E. Mullen,* Asst. Attorney General, for receivers.

*Judah C. Semonoff,* for a certain creditor.