# Richmond

STATE-PLANTERS BANK AND TRUST COMPANY, ET AL. V.
POLLARD & BAGBY INVESTMENT CORPORATION,
ET AL.

April 21, 1947.

Record No. 3165.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley
and Buchanan, JJ.

The opinion states the case.

*Williams, Mullen & Hazelgrove* and *Ralph T. Catterall,* for the appellants.

*Hill Montague* and *John C. Williams,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

The trustee and beneficiaries named in a certain deed of trust instituted this suit to recover from Harry Craver's estate $9,641, the amount of delinquent taxes due and paid the city of Richmond from the proceeds of sale of the trust property in a suit instituted by the city to enforce its tax lien. From a decree directing the executors of the estate to pay the said sum to the trustee and the beneficiaries, this appeal was allowed.

The facts are not controverted and may be stated as follows: On June 1, 1925, John R. Blair and wife conveyed the lot known as 101 West Grace street, Richmond, Virginia, to Pollard and Bagby, Inc., trustees, to secure certain notes totaling more than $50,000. On September 10, 1931, Harry Craver and Pollard and Bagby, Inc., trustee, executed ·a written contract whereby the trustee, as agent for the bene-

ficiaries, agreed to extend the maturity date of the notes from June 1, 1931, to June 1, 1933. Harry Craver, in consideration of this extension, promised and agreed to pay the taxes on the property and the interest on the notes for the period of two years, or until June 1, 1933. It was stated in this contract that John R. Blair and wife had conveyed the property to Harry Craver. Each of the parties fulfilled his obligations under this agreement. However, in the deed from John R. Blair and wife to Craver is found this stipulation: "It · is expressly understood that the said party of the second part (Craver) does not assume any liability whatsoever in connection with the aforesaid deed of trust or the obligations which it secures, * * * ."

No part of the annual tax, assessed against the property described in the deed of trust, was paid after June 1, 1933. On August 24, 1939, Harry Craver died. The State-Planters Bank and Trust Company and R. A. Burger qualified as executors of his estate.

In May, 1940, the city of Richmond instituted a chancery suit against the executors of the Craver estate and others to subject the property described in the deed of trust to the payment of the taxes returned delinquent for the years 1933 through 1939. The executors and devisees under Craver's will filed an answer denying any personal liability on the estate for the taxes, but offering no objection to the sale of the property. Pollard and Bagby, Inc., trustee, filed an answer to the bill but did not specifically raise the question of the liability of the Craver estate for the payment of the taxes until after the special commissioner had made his report of the liens and their priorities on the property in question. After this report had been filed, Pollard and Bagby, Inc., asked permission to file a petition praying that the cause be recommitted to the special commissioner to ascertain and report whether or not the personal estate of Harry Craver was sufficient to pay the taxes in question and, if so, whether the executors of the estate should be required to pay them out of the personal estate in their hands before the city of Richmond should be permitted to enforce its liens for taxes

against the real estate described. The trial court refused to determine the question of the liability for delinquent taxes as between the beneficiaries in the deed of trust and the Craver estate and ordered the property sold for the payment of the delinquent taxes. On appeal to this court, it was held, in *Pollard & Bagby* v. *Richmond*, 181 Va. 181, 24 S. E. (2d) 564, that while the court below, in the exercise of its sound judicial discretion, might have determined this question, its refusal to do so was not reversible error. The decree was affirmed.

It appears that the property brought $10,500 at this foreclosure sale, of which $9,641 was paid to the city of Richmond for the taxes assessed from 1933 to June 1, 1943, leaving more than $50,000 due the beneficiaries. In December, 1943, Pollard and Bagby, Inc., trustee, and the holders of the securities described in the deed of trust executed by John R. Blair and wife, instituted this suit against the executors of Harry Craver's estate. The complainants, hereinafter designated as the mortgagees, alleged that, under the facts stated, they were entitled to be subrogated to all rights of the city of Richmond in the collection of the taxes assessed against the real estate in question. The prayer of the bill was that they be given a judgment against the Craver estate, hereinafter designated as the non-assuming grantee, for $9,641, the amount of taxes paid to the city.

[1] The question to be determined is whether a mortgagee may, in an independent action or suit, recover from a non-assuming grantee of the mortgagor the amount of delinquent taxes paid out of the proceeds of the sale of the mortgaged property.

The mortgagees rely on the authority of that line of cases which hold that where a person, having an interest in property, pays the taxes due by another, he is subrogated to the lien of the taxing authority. This principle was applied by this court in *Simmons* v. *Lyles*, 32 Gratt. (73 Va.) 752, where it was held that a widow, in possession of real estate and before the assignment of dower, had the right to pay

the taxes for her own protection and indemnity and to look to the property for reimbursement.

This general rule is not applicable to the present case because the mortgagees did not pay the taxes. They were paid out of the proceeds of the sale of the mortgaged property in a suit instituted by the city, as the holder of the first lien.

What the mortgagees actually are claiming is the right to exercise the sovereign powers of a subdivision of the Commonwealth to obtain a money judgment against the executors on the ground that the sum demanded should have been paid by another and not out of the proceeds of the sale of the mortgaged property.

There are cases which seem to support the contention of the mortgagees. The Pennsylvania cases declare that a record title holder is liable for the payment of taxes as an incident to ownership of land and that, if a mortgagee is required to pay taxes, he steps into the shoes of the taxing authority and is subrogated to its rights, which include the right to proceed against the record title holder. See *Pennsylvania Co., etc., v. Bergson*, 307 Pa. 44, 159 A. 32; *Hogg v. Longstreth*, 97 Pa. 255; *Fidelity-Philadelphia Trust Co. v. Land Title Bank, etc., Co.*, 326 Pa. 262, 192 A. 121; *Land Title Bank, etc., Co. v. Ward*, 20 F. Supp. 810.

It was held, in *Buskirk v. State-Planters' Bank, etc., Co.*, 113 W. Va. 764, 169 S. E. 738, that one possessed of a substantial interest in property, who pays the taxes thereon for which another is bound, is entitled ordinarily to be subrogated to the right of the taxing authority. See *Camden v. Fink Coal, etc., Co.*, 106 W. Va. 312, 145 S. E. 575, 61 A. L. R. 584, 587. "But the right of subrogation is not an absolute right, which a paying creditor may enforce at will." It was further declared that the right of subrogation may be extinguished by contract.

The trust deed, which fixes the rights of the parties, contained a covenant that the grantor, J. L. Blair, should pay all taxes assessed against the property, and upon his default the trustee or beneficiary could pay them and the amount so

paid should be added to and become a part of the sum secured by the deed of trust. The deed of trust further provided that, upon the breach of any of the covenants, the beneficiaries had a right to cause the property to be sold under the terms of the deed of trust. The right to recover taxes paid is one which inures to the creditor as mortgagee, and it can only be enforced by him therefore in his capacity as mortgagee. *Horrigan* v. *Wellmuth*, 77 Mo. 542; *Stone* v. *Tilley*, 100 Tex. 487, 101 S. W. 201, 123 Am. St. Rep. 819, 10 L. R. A. (N. S.) 678; *Vincent* v. *Moore*, 51 Mich. 618, 17 N. W. 81; *Citizens Sav. Bank* v. *Guaranty Loan Co.*, 62 R. I. 448, 6 A. (2d) 688, 123 A. L. R. 1236. " * * * money paid by the holder of a mortgage to redeem the premises from a tax sale does not constitute a lien apart from the mortgage, but will be discharged when the mortgage is satisfied; and whether the amount paid is or is not included in the sum for which the mortgage is foreclosed, no subsequent or separate proceeding can be maintained against the mortgagor to enforce its payment." Wiltsie on Mortgage Foreclosure, 5 Ed., vol. 2, pp. 896-7. "Generally a mortgagee who pays the taxes on the land to protect his interest must enforce his claim therefor at the time of foreclosing the mortgage, and cannot subsequently maintain an action for reimbursement against the owners of the equity of redemption who were not liable for the mortgage debt." 3 Cooley on Taxation, 4 Ed., p. 2518.

In *First Carolinas Joint Stock Land Bank* v. *McNiel*, 177 S. C. 332, 181 S. E. 21, 24-5, it is said: "The amount paid for taxes is a demand collateral to and dependent upon the mortgage or judgment. It is not an independent right enforceable in a separate action. It has been held in other jurisdictions that a mortgagee's claim for such taxes must be enforced as part of the mortgage debt, and not otherwise. * * * . The lien for taxes is coexistent with the lien under the mortgage. Such a statutory lien is reasonable and just; the rights of the mortgage creditor are well known and easily enforceable; as long as he retains his mortgage, he is in a position to assert his rights."

The parties to this deed covenanted that any taxes paid by the beneficiaries, with interest from the time of payment, "shall constitute a lien, under and by virtue of this deed, on the property hereby conveyed, and in event of sale shall be treated as a part of the debt secured hereby, and shall also be otherwise recoverable by all the remedies at law, or in equity, by which the debt aforesaid may be recoverable * * * ." It thus appears that the mortgagors and the mortgagees anticipated that there might be a default in the payment of taxes; and that, if so, the mortgagees were given the right to recover the taxes paid; and that all sums so paid were to become an integral part of the mortgage debt.

This agreement of the parties is now a part of the statute law of this Commonwealth. Code, sec. 5167, as amended in 1926, Acts 1926, c. 324, provides that, in the absence of stipulation to the contrary, every grantor in a deed of trust covenants that he will pay all taxes, levies, assessments and charges upon the property, and that, if he fails to perform this covenant, the trustee or beneficiary may satisfy the same; and all money so advanced, with interest, shall be a part of the debt secured by the deed and, in the event of sale, "to be paid next after the expenses of executing the trust, and shall be otherwise recoverable from the grantor as a debt."

■ These were the rights of the mortgagees when the mortgagors conveyed the equity of redemption to Harry Craver. These rights were not modified, curtailed or limited by the fact that Craver became the owner of the equity of redemption. He assumed no obligation, legal or moral, to the mortgagees. He acquired merely an option to discharge the mortgage debt and thereby acquire a fee simple right to the mortgaged property.

■ The city had a lien on the mortgaged property for the amount of taxes which had been assessed and had accumulated over the years. This claim was entitled to preference against Craver's personal estate, but it had no lien except the one on the property in question.

The covenants in the deed and the statutory law fix the rights of a mortgagee who pays taxes to protect the mort-

gaged property and make such payment an integral part of the mortgage debt so far as the mortgaged property is concerned. It would seem to be inequitable to give a mortgagee who fails to pay the taxes a more advantageous position than he would have had had he paid the taxes and prevented the accumulation of additional penalties and costs.

"But if a mortgagee fails to follow this course (that is, pay the taxes and add the amount so paid to the mortgage debt), may he recover the disbursement by way of a quasi-contractual suit? Whether he can do so as against the mortgagor or an assuming grantee is open to some doubt, as we have seen, but whatever may be the rule in that regard, *the non-assuming grantee is in quite a different situation, for he has not assumed the debt itself, nor has he asked anybody to pay taxes for him.* It is all right for the mortgagee to add tax bills paid by him, to the debt for which he forecloses; but it is another thing to claim that the non-assuming grantee is personally liable for the amount of the tax thus paid. As he is not liable personally for the mortgage debt itself, it follows that the non-assuming grantee is not liable for any accretions; and so there is no theory which would justify a personal action by the mortgagee against this grantee for a sum representing taxes paid by the plaintiff." (Italics supplied.) 2 Glenn on Mortgages, p. 1170.

██ The mortgagees knew that the mortgagors had been in default of the payment of interest, principal and taxes since June, 1933. They knew that taxes, penalties and costs were accumulating from year to year. They did not see fit to exercise their right to pay taxes on the property. They have taken no steps either to foreclose the mortgage or to protect the property from sale by the taxing authority. Subrogation is a creature of equity. It is founded on equity and benevolence and it is not to be allowed except in a clear case and where it works no injustice to others. The right depends upon the facts and circumstances of each particular case, to which must be applied the principles of justice.

██ The mortgagees have their right of action against

the mortgagors for the unpaid balance due on the mortgage debt, which includes the sum paid for taxes out of the proceeds of sale of the property. They have no right of action against the non-assuming grantee for either amount, as he was under no obligation to pay any part of the mortgage debt or its accretions. Since the covenants of the contracting parties and the statute law fix the status of delinquent taxes on property which has been mortgaged to secure a debt, additional rights such as are incidental to a public right of taxation ought not to be delegated to private persons by judicial intervention. See 61 A. L. R. 589; 106 A. L. R. 1212; LRA 1915D 699; 99 Am. St. Rep. 499; 17 Ann. Cas. 1134.

The decree of the trial court is reversed and the case dismissed.

*Reversed and dismissed.*