**The LINCOLN SAVINGS BANK,**
**Plaintiff-Appellee,**

v.

**J. William HAYES, et al.,**
**Defendants-Appellants.**

**No. 79–3549.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 4, 1981.

Decided Feb. 17, 1982.

John Bickel, Thacker, Thacker & Bickel, Owensboro, Ky., Daniel M. Herscher, Beverly Hills, Cal., for defendants-appellants.

William L. Montague, Stoll, Keenon & Park, Lexington, Ky., for plaintiff-appellee.

Before KEITH and JONES, Circuit Judges, and BATTISTI, District Judge.*

BATTISTI, Chief Judge.

This is an appeal in a diversity action brought by the plaintiff-appellee, The Lincoln Savings Bank (Lincoln), a New York corporation, against the defendants-appellants, J. William Hayes and twenty-eight (28) other California residents (the fee owners). At issue is the nonpayment of property taxes on real estate located in Leitchfield, Grayson County, Kentucky. For the

reasons stated below, we reverse the judgment of the district court.

The pertinent facts, which are not in issue, are as follows. On July 18, 1974, Lincoln and the PN Corporation, a Virginia corporation not a party to this action, entered into a financial transaction in which Lincoln was granted a mortgage on real estate owned by PN in Leitchfield, Grayson County, Kentucky. The mortgaged property consisted of a single tract of sixteen acres improved with a factory building. The mortgage secured a loan of $1,875,000 by Lincoln. Covenant # 6 in the mortgage provided that the mortgagor, PN, would pay all the taxes assessed on the property, and that, in the event PN failed to pay the taxes, Lincoln could pay the taxes and add such payments to the indebtedness secured by the mortgage.

In August 1974, PN conveyed the property to E.I.C., Inc., a California corporation, which is not a party to this action.[1] The transactions involving Lincoln, E.I.C., and PN were not isolated incidents, but rather were related steps in a more complex financing arrangement.

In September 1974, the appellants, the fee owners, purchased the property from E. I. C. as tenants in common. The appellants did not assume the mortgage, but the property was purchased *subject* to the Lincoln mortgage.

Lincoln received mortgage payments until April 1976. After that date, no further payments on the mortgage were made by PN, E. I. C., or the fee owners. In May 1976, a bank, not a party to this action, instituted a foreclosure action to enforce a second mortgage it held on the property. In April 1978, the Grayson Circuit Court in Kentucky held that Lincoln's lien had first priority and that PN Corporation was liable under the mortgage. The property was sold in May of 1978, pursuant to the state court's order. The judicial sale left Lincoln with a deficiency of $493,000.

---

* Honorable Frank J. Battisti, Chief Judge, United States Court, Northern District of Ohio, sitting by designation.

1. Whether E.I.C. assumed the mortgage to Lincoln or purchased the property subject to the mortgage is a matter apparently being litigated in the Kentucky state courts.

During the course of the foreclosure proceedings in 1976 and 1977, the fee owners, the owners of the mortgaged property, failed to pay $44,444.08 in state and local taxes assessed against the property.[2] Consequently, the state court in the foreclosure proceedings ordered that, upon the sale of the property, the proceeds were to be distributed in the following order of priority:

(a) The costs of this action;

(b) The Master Commissioner's fees and expenses incurred in connection with the sale.

(c) *The payment of all delinquent (prior to 1978) city, county, state and/or school property taxes, and special property assessments constituting a lien against the property, together with all interests and penalties thereon;*

. . . .

(e) To the satisfaction of the judgment adjudicated and awarded to Lincoln herein . . . . (emphasis added)

The priority treatment accorded the delinquent taxes by the court was simply a recognition of Ky.Rev.Stat. § 134.420(1) which provides in pertinent part:

The state and each county, city or other taxing district shall have a lien on the property assessed for taxes due them respectively for five (5) years following the date when the taxes become delinquent, . . . . The lien . . . shall have priority over any other obligation or liability for which the property is liable.

The tax liability on the property was extinguished when $44,444.08 from the proceeds of the sale of the mortgaged property was paid to the taxing authorities. This payment reduced by $44,444.08 the amount Lincoln would have obtained from the foreclosure sale. Lincoln brought the present action alleging that the failure of the fee owners to pay the 1976 and 1977 property taxes prior to the foreclosure sale caused $44,444.08 of the sale proceeds due Lincoln to be used to extinguish the defendants' tax debt. Lincoln sought recovery of the $44,-444.08 on the theory that it was equitably subrogated to the claim of the taxing authorities against the fee owners.

The district court, on cross motions for summary judgment, found for Lincoln. The court acknowledged a lack of precedent under Kentucky law. However, the court relied upon a policy asserted in an otherwise unrelated case[3] that property owners should not be allowed to shift their tax obligations onto others. The court held that Lincoln should be subrogated to the claims of the taxing authorities against the fee owners, because $44,444.08 out of the proceeds of the foreclosure sale was used to satisfy the delinquent taxes of the fee owners.

The fee owners appeal from this judgment of the district court. The issue presented on this appeal is whether a mortgagee can recover from a grantee, who did not assume the mortgage, an amount equal to delinquent property taxes, owed by the grantee, but which was deducted from the sale proceeds upon foreclosure of the mortgaged property. The question is one of first impression under the law of Kentucky.[4] However, the issue has generally been dealt with by other jurisdictions. *Northern Finance Corp. v. Byrnes,* 5 F.2d 11 (8th Cir. 1925); *San Mateo Bank v. Dupret,*

2. Under Ky.Rev.Stat. § 134.050(1), a property tax is a personal debt of the individual in whose name the property is listed on the assessment date.

3. *Caine v. Rich,* 33 Ky. 261, 110 S.W. 289 (1908). In this case, a mortgagor died and his eight children became the owners of the mortgaged premises. The mortgagee foreclosed on the mortgage and the premises were sold and purchased by three of the mortgagor's children. The children, who had failed to pay property taxes on the premises, then sought to have an amount equal to the delinquent taxes paid out of the purchase money received by the mortgagee. In refusing to allow such payment, the court noted that the fact that the children failed to perform the duty they owed the state should not give them the right to shift this obligation to the mortgagee.

4. The Court must attempt to ascertain the decision at which the Kentucky courts would ultimately arrive. *See, Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 1A Moore's Federal Practice ¶ 0.309[2] at 3117 (2d ed. 1980).

124 Cal.App. 395, 12 P.2d 669 (1932); *Citizens Savings Bank v. Guaranty Loan Co.*, 62 R.I. 448, 6 A.2d 685 (1939); *State-Planter's Bank & Trust Co. v. Pollard & Bagby Inv. Corp.*, 186 Va. 217, 42 S.E.2d 287 (1947); *see generally* 84 ALR 1366; and Osborne, *Mortgages* § 173, at 300 (2d ed. 1970).

 The results in these cases follow from certain basic principles of the law of mortgages. Ordinarily, a mortgagor has the duty of paying all taxes on the mortgaged property. However, if the mortgagor fails to pay the taxes, it is well settled that the mortgagee may pay them to protect his security interest in the land. A mortgagee who pays taxes accruing upon the property may add these disbursements to the mortgage debt and foreclose for the total sum thus created. I Glenn, *Mortgages* § 91.1, at 551 (1943); Osborne, *Mortgages* § 173, at 298–99 (2d ed. 1970). Kentucky has codified a mortgagee's right to subrogation, if he pays the delinquent taxes of his mortgagor:

> Any person having a lien on property upon which the owner has failed to pay the taxes and has become delinquent may pay the taxes, interest and penalties thereon and be subrogated to the lien of the state, county or taxing district therefor [sic] . . . .

Ky.Rev.Stat. § 134.080(1).

Commercial mortgagees are undoubtedly aware of the hazards associated with delinquent property taxes. State law customarily creates a statutory lien that is a paramount lien on property with delinquent taxes. In Kentucky, notice of this hazard is provided by Ky.Rev.Stat. § 134.420(1). In the present case, Lincoln was aware of the risk of delinquent taxes and the appropriate remedies. A covenant provision in the mortgage between Lincoln and PN Corporation provided that in the event the mortgagor, PN, failed to pay the property taxes, Lincoln could pay the taxes and add such payments to the indebtedness secured by the mortgage.

Mortgagees, who have paid the delinquent property taxes of their mortgagors and then failed to assert a claim for reimbursement during the foreclosure proceedings, have been denied an independent action to recover this expenditure. I Glenn, *Mortgages* § 91.1, at 553 (1943); 2 Jones, *Law of Mortgages of Real Property* § 883, at 213 (8th ed. 1928); Osborne, *Mortgages* § 173, at 299–300 (2d ed. 1970). The stated rationale in these authorities is that, because the amount paid for taxes together with the amount due upon the mortgage constitutes but a single and indivisible demand existing only by virtue of the mortgage. The claim for reimbursement of taxes cannot be separated and collected in an independent action.[5]

This rationale, developed in cases involving two parties, a mortgagor and mortgagee, has been extended to the situation in which the mortgagor has conveyed his interest to a grantee who has not assumed the mortgage. For example, in *Citizens Savings Bank v. Guaranty Loan Co.*, 62 R.I. 448, 6 A.2d 688 (1939), a mortgagee paid delinquent taxes which a nonassuming grantee had failed to pay. The mortgagee foreclosed on the property and a deficiency judgment was entered. The mortgagee then sued the nonassuming grantee to recover the amount paid for taxes. The Supreme Court of Rhode Island held that the mortgagee was not entitled to an independent action to recover the tax payment. The court relied upon the rule, delineated above, that a mortgagee who has paid taxes upon the secured property to protect his interest cannot, after the foreclosure of the mortgage, maintain an independent action against the mortgagor to recover the amount so paid. The Rhode Island court stated that a case involving a nonassuming grantee compelled the same result:

> better justified by notions of expediency, in requiring the mortgagee to combine all his claims arising from the mortgage transaction in one action. Osborne, *Mortgages* § 173, at 300 (2d ed. 1970).

---

**5.** The rationale has been justly criticized by Professor Osborne since the mortgage claim is based on a consensual transaction, whereas the claim for reimbursement for taxes paid is nonconsensual. Indeed, the rule would seem to be

However, in the instant case, we do not have to go so far as some of these cases, because the defendants here are strangers to the mortgage. If the above rule be well recognized and considered applicable in an action by a mortgagee against a mortgagor, we think it should apply logically for a stronger reason where, as here, the defendants are not obligated to the mortgagee on the note or by the mortgage, or by any agreement, or other circumstance to be implied, in fact or law. There perhaps are other authorities *contra* but the logic of the above-cited cases impresses us as applicable here, especially since the mortgagee, in effect, seeks to recover in an action at law, independently of the mortgage, the amount of taxes which it had no right to pay except for the mortgage and where the defendants are not obligated under the mortgage *or other agreement.*

*Id.* at 456, 6 A.2d at 692 (emphasis original).[6]

■ The Court, however, need not address the issue of whether a mortgagee who has actually paid the delinquent taxes, owed by a nonassuming grantee, to protect his security interest should be entitled to an independent action after foreclosure to recover the amounts so paid. In the instant action, the mortgagee-Lincoln did not actually pay the delinquent taxes. Instead, an amount equal to the delinquent taxes was subtracted from the proceeds upon the foreclosure sale of the secured property. The question to be resolved in the present case is whether a mortgagee may, in an independent action, recover from the nonassuming grantee of the mortgagor the amount of delinquent taxes paid out of the proceeds of the sale of the mortgaged property.

The Supreme Court of Virginia confronted this issue in a case quite similar to the instant controversy. *State-Planters Bank & Trust Co. v. Pollard & Bagby Inv. Corp.,* 186 Va. 217, 42 S.E.2d 287 (1947).[7] In this case a mortgagor conveyed his interest in land, subject to a deed of trust, to a nonassuming grantee. The nonassuming grantee failed to pay property taxes for the years 1933 through 1939 to the city of Richmond. After the nonassuming grantee died, the city of Richmond brought suit against the executors of the estate to recover delinquent taxes, and the property was foreclosed to satisfy the city's tax lien. The proceeds from the sale of the mortgaged property were practically exhausted in satisfying this tax lien. The mortgagee then sued the executors of the grantee, claiming subrogation to all rights of the city in collection of the taxes assessed against the realty, since the mortgage security had been consumed in discharging the estate's debt to the city. The court held that the mortgagee could not recover from a nonassuming grantee the amount of delinquent taxes paid the city of Richmond from the proceeds of the sale.

The Virginia court first reviewed the customary rule that the mortgagee could have protected his security by paying the delinquent taxes, adding the amount to the debt secured by the mortgage, and foreclosing for the entire amount in a single action. *Id.* at 224, 42 S.E.2d at 290. The mortgagee was authorized to do this both under the deed of trust and by a Virginia statute. However, the court noted that the mortgagee did not pay the taxes—the taxes were paid out of the proceeds of the tax foreclosure sale.

The court concluded that the nonassuming grantee was not contractually obligated to the mortgagee to pay any part of the mortgage debt or to reimburse the mortga-

---

**6.** *See also Stone v. Tilley,* 100 Tex. 487, 101 S.W. 201 (1907), in which the Texas Supreme Court reached the same conclusion in a similar case, and II Glenn § 262 at 1168. The result in cases such as *Citizens Savings Bank,* in which the mortgagee has actually paid the delinquent taxes on the secured property, is open to criticism. *See* dissenting opinion of Moss, J. in *Citizens Savings Bank v. Guaranty Loan Co.,*

62 R.I. 448, 457, 6 A.2d 688, 693 (1939), and *Restatement of the Law of Restitution* § 104, at 437 (1937). (example 3).

**7.** The case was discussed in 34 Va.L.R. 98 (1948) and 60 Harv.L.R. 1355 (1947). *Cf. Pollard & Bagby, Inc. v. City of Richmond,* 181 Va. 181, 24 S.E.2d 564 (1943) (related case).

gee for taxes paid on the mortgaged premises. The Court emphasized that the mortgagee had failed to use the normal means of protecting his interest:

> The mortgagees knew that the mortgagors had been in default of the payment of interest, principal and taxes since June, 1933. They knew that taxes, penalties and costs were accumulating from year to year. They did not see fit to exercise their right to pay taxes on the property. They have taken no steps either to foreclose the mortgage or to protect the property from sale by the taxing authority. Subrogation is a creature of equity. It is founded on equity and benevolence and it is not to be allowed except in a clear case and where it works no injustice to others.

*Id.* at 225, 42 S.E.2d at 291.

For these reasons, the court concluded that it would be inequitable to allow a mortgagee who had failed to pay the taxes to protect his own interests to be subrogated to the lien of the taxing authority against the nonassuming grantee.

This Court finds the result in *State Planters Bank & Trust Co. v. Pollard & Bagby Inv. Corp.*, 186 Va. 217, 42 S.E.2d 287 (1947), to be appropriate.[8] In the instant case, Lincoln, the mortgagee, could have paid the delinquent property taxes to safeguard its security interest as provided in Ky.Rev. Stat. § 134.080(1), and therefore, could have automatically become subrogated to the lien of the state against the fee owners. This Lincoln failed to do. The property taxes in question were for 1976 and 1977, and the foreclosure action was instituted in May 1976. The judicial sale occurred in May 1978. The taxes, although not delinquent at the institution of the foreclosure action, became due during its pendency and could have been paid by Lincoln. Lincoln had constructive knowledge of the priority accorded the collection of delinquent taxes under Ky.Rev.Stat. § 134.420(1). In fact, Lincoln, itself, recognized the traditional priority accorded to delinquent taxes. In paragraph 25 of its counterclaim, cross-claim, and amended cross-claim filed in the foreclosure action in October 1976, Lincoln contended that it had a first lien on the mortgaged premises entitling it to payment upon sale of the premises after satisfaction of any court costs and delinquent property taxes. Lincoln was therefore well aware of the risk of possible displacement of its security interest by a tax lien. Apparently, Lincoln speculated that the sale of the mortgaged property would bring an amount greater than the mortgage and taxes. Unfortunately, such speculations proved to be unfounded, and Lincoln suffered a deficiency instead. Lincoln, of course, retained a right of action against the mortgagor or the party who assumed the mortgage for the unpaid balance due on the mortgage debt.[9]

Lincoln asserts that it is nevertheless entitled to be subrogated to the lien of the taxing authority against the fee owners. Subrogation is merely the means used by equity to prevent unjust enrichment when one person's obligation has been discharged by another in such circumstances that it is deemed unjust for the debtor to retain the benefit. 1 Palmer, *Law of Restitution* § 1.5(b), at 21–22 (1978). The Court concludes that Lincoln is not entitled to an action in subrogation against the fee owners to recover the amount paid out of the foreclosure sale proceeds in satisfaction of the outstanding tax lien against the mortgaged property. Although aware of the risk of possible displacement of its security interest by a tax lien on the mortgaged premises, Lincoln did not actively seek to

---

8. *But see Fleisher v. Blackburn*, 15 Pa.Super.Ct. 289 (1900); *Republic Building & Loan Assoc. v. Webb*, 12 Pa.Super.Ct. 545 (1900); Note, Remedies of a Mortgagee Who Pays Taxes, 90 U.Pa.L.R. 90, 93, 97–99 (1941). These cases allowed a mortgagee to recover against a nonassuming grantee for the amount of taxes paid out of the proceeds of a sheriff's sale. The cases rely on the earlier case of *Hogg v. Longstreth*, 97 Pa. 255 (1881), which asserted a policy that a taxpayer should not be able to shift his burden to another.

9. *See* footnote one, *supra.*

safeguard its interest by actually paying the delinquent taxes on the property.[10]

The judgment of the district court is reversed.

---

**10.** The Court need not consider appellants' second contention that the district court erred in failing to apply the doctrine of *res judicata* to bar Lincoln's action.